■ JOHN M. TRUE, Respondent-Appellant, v D. ROBIN TRUE, Appellant-Respondent. [882 NYS2d 261]—

In an action to reform the parties' stipulation of settlement, which was incorporated but not merged in their judgment of divorce dated March 28, 2005, the defendant appeals from an order of the Supreme Court, Rockland County (Sherwood, J.), dated December 31, 2007, which granted that branch of the plaintiff's motion which was for summary judgment on the complaint, and the plaintiff cross-appeals, as limited by his brief, from so much of the same order as directed a hearing to

determine the sum owed by the defendant to the plaintiff for the taxes that the plaintiff, in effect, overpaid upon redemption of certain securities by the defendant.

Ordered that on the Court's own motion, the notice of cross appeal is deemed to be an application for leave to cross-appeal, and leave to cross-appeal is granted (*see* CPLR 5701 [c]); and it is further,

Ordered that the order is modified, on the law, by deleting the provision thereof directing a hearing to determine the sum owed by the defendant to the plaintiff for the taxes the plaintiff, in effect, overpaid upon redemption of the subject securities by the defendant, and substituting therefor a provision directing a hearing to determine the number of shares the defendant must remit to the plaintiff or the equivalent value of such shares in order to effectuate the parties' intent to divide such shares "50-50 in kind"; as so modified, the order is affirmed, with costs to the plaintiff, and the matter is remitted to the Supreme Court, Rockland County, for further proceedings consistent herewith.

The parties were married on May 26, 1991 and divorced by judgment dated March 28, 2005. The judgment of divorce incorporated the parties' stipulation of settlement (hereinafter the agreement), executed on February 2, 2005, which provides, in article XIII, that the plaintiff's stock awards from his employer, Goldman Sachs, would be "divided 50-50 in kind." To that end, the agreement specified that 3,655 shares of the stock awards were available for division and provided, based on a formula created by the plaintiff, that the defendant would receive 1,894 of those shares. The defendant thereafter redeemed 1,894 shares and later, the plaintiff learned that only 150 shares remained.

After the defendant rejected the plaintiff's demand that she remit to him the shares or the value thereof in excess of her 50% share, the plaintiff commenced the instant action. After joinder of issue, the plaintiff moved, inter alia, for summary judgment and for an attorney's fee. The plaintiff argued that a mutual mistake led the parties to erroneously use the gross number of shares, 3,655, which were the number of delivered and outstanding shares available prior to the payment of taxes, fees, and other withholdings, instead of the net number of shares. The plaintiff accordingly sought reformation of the agreement to reflect the net number of shares actually available for division. The defendant opposed, arguing that the only mistake was made by the plaintiff and, in any event, even if her receipt of 1,894 shares did not result in a 50-50 division of the

subject shares, she specifically agreed to receive those shares in return for forgoing additional maintenance and health insurance.

In granting that branch of the plaintiff's motion which was for summary judgment on the complaint, the Supreme Court characterized the parties' dispute as related to the parties' intent to bear equally the tax consequences upon redemption of the shares. Since it could not determine, on the record before it, the amount owed by the defendant to the plaintiff for taxes she should have paid when she redeemed the 1,894 shares, the court directed a hearing on that issue. The court did not address that branch of the plaintiff's motion which was for an award of an attorney's fee. We modify.

For a party to be entitled to reformation of a contract on the ground of mutual mistake, the mutual mistake must be material, i.e., it must involve a fundamental assumption of the contract (*see Janowitz Bros. Venture v 25-30 120th St. Queens Corp.*, 75 AD2d 203, 214 [1980]). A party need not establish that the parties entered into the contract because of the mutual mistake, only that the "material mistake . . . vitally affects a fact or facts on the basis of which the parties contracted" (*id.* at 214). Moreover, "proof of mistake must be 'of the highest order' [and] must 'show clearly and beyond doubt that there has been a mistake' and . . . it must show with equal clarity and certainty 'the *exact* and *precise* form and import that the instrument ought to be made to assume, in order that it may express and effectuate what was really intended by the parties' " (*id.* at 215, quoting 13 Williston, Contracts § 1548, at 125 [3d ed]). Since "the thrust of a reformation claim is that a writing does not set forth the actual agreement of the parties," both the parol evidence rule and the statute of frauds are inapplicable (*see Chimart Assoc. v Paul*, 66 NY2d 570, 573 [1986]). Thus, a party seeking to reform a contract based on, for example, mutual mistake, may rely on extrinsic evidence even if the agreement is not ambiguous (*id.* at 573).

Here, the plaintiff established, prima facie, that article XIII of the agreement contains a mutual mistake. First, both the final agreement and all five prior drafts thereof refer to the gross number of shares, as set forth in Goldman Sachs equity award summaries, as being available for division between the parties. Although an equity award summary dated January 25, 2005, was generated by the plaintiff in his capacity as a Goldman Sachs employee, he immediately shared that summary with the defendant and the defendant does not dispute the plaintiff's contention that the parties and their counsel each relied on the

summary during the final negotiation session on February 2, 2005. Although footnotes 3 and 4 on page 4 of that summary explain the distinction between gross and net shares, neither the parties nor their counsel apparently realized that the "3,655" number of shares they were using, based on page 2 of the summary, represented the gross shares, not the net shares that would actually be delivered after Goldman Sachs paid taxes and fees, and made other withholdings. As such, the reference in article XIII to the defendant receiving 1,894 shares is erroneously based on one half of the gross shares, as the parties did not consider that upon the defendant's redemption of 1,894 shares, Goldman Sachs would use a significant number of the total number of gross shares to pay taxes and fees, and make other withholdings. Accordingly, the plaintiff established, prima facie, that the parties' use of 3,655 gross shares was a mutual mistake because it undermined their intent to divide the *net* shares available for division, 50-50 in kind (*see Janowitz Bros. Venture v 25-30 120th St. Queens Corp.*, 75 AD2d at 214-215). In opposition to the plaintiff's prima facie case, the defendant failed to raise a triable issue of fact.

For the reasons set forth above, the plaintiff's motion for summary judgment was properly granted and the defendant's request on appeal that we search the record and award her summary judgment dismissing the complaint must be denied.

Turning then to the remedy to which the plaintiff is entitled, contrary to the Supreme Court's determination, "in kind" division does not indicate the parties' intent to "bear any burden upon the shares resulting from their redemption." Rather, a practical interpretation of article XIII supports the conclusion that the parties intended "in kind" to mean actual shares or their equivalent monetary value (*see Palermo v Palermo*, 34 AD3d 548 [2006]; *Fetner v Fetner*, 293 AD2d 645 [2002]; *McErlean v Mendelson*, 256 AD2d 391, 392 [1998]). Accordingly, we reform article XIII to refer to the net shares available for division, and to provide that each of the parties are to receive one half of those net shares or their equivalent monetary value. Further, since the record is inadequate to determine the number of shares the defendant must remit to the plaintiff and the parties dispute the price per share to be applied, the matter must be remitted to the Supreme Court, Rockland County, for a hearing on those issues and a new determination.

Finally, the plaintiff's argument regarding that branch of his motion which was for an attorney's fee is not properly before us. Since that branch of the plaintiff's motion was not addressed by the Supreme Court, it remains pending and undecided (*see*

*George v Marshalls of MA, Inc.,* 61 AD3d 925 [2009]; *Katz v Katz,* 68 AD2d 536 [1979]). Rivera, J.P., Florio, Belen and Austin, JJ., concur.