[968 NE2d 459, 945 NYS2d 222]

Steven Simkin, Respondent, v Laura Blank, Appellant.

Argued February 14, 2012; decided April 3, 2012

**POINTS OF COUNSEL**

*Emery Celli Brinckerhoff & Abady LLP,* New York City (*Richard D. Emery* and *Adam R. Pulver* of counsel), for appellant. I. New York's fundamental public policy of finality in the equitable distribution process bars the relief Steven Simkin seeks. (*Boronow v Boronow,* 71 NY2d 284; *Merrill Lynch, Pierce, Fenner & Smith v Benjamin,* 1 AD3d 39; *Rainbow v Swisher,* 72 NY2d 106; *Kojovic v Goldman,* 35 AD3d 65; *Siegel v Siegel,* 132 AD2d 247, 74 NY2d 602; *O'Brien v O'Brien,* 66 NY2d 576; *Welsh v Lawler,* 282 AD2d 977; *In re Vivendi Universal, S.A. Sec. Litig.,* 605 F Supp 2d 586; *In re MBIA, Inc., Sec. Litig.,* 700 F Supp 2d 566; *Freudenberg v E\*Trade Fin. Corp.,* 712 F Supp 2d 171.) II. Steven Simkin has not (and cannot) allege any mutual mistake as to a fundamental assumption of the agreement. (*Matter of Gould v Board of Educ. of Sewanhaka Cent. High School Dist.,* 81 NY2d 446; *George Backer Mgt. Corp. v Acme Quilting Co.,* 46 NY2d 211; *Godfrey v Spano,* 13 NY3d 358; *Maas v Cornell Univ.,* 94 NY2d 87; *Centro Empresarial Cempresa S.A. v América Móvil, S.A.B. de C.V.,* 17 NY3d 269; *Rowe v Great Atl.*

& Pac. Tea Co., 46 NY2d 62; *Shell Trademark Mgt. BV & Motiva Enters., LLC v Ray Thomas Petroleum Co., Inc.*, 642 F Supp 2d 493; *Palestine Monetary Auth. v Strachman*, 62 AD3d 213; *Walker v City of New York*, 46 AD3d 278; *Vadney v United Traction Co.*, 193 App Div 329.) III. Even if there were a mutual mistake, rescission, not reformation, is the only remedy. (*Chimart Assoc. v Paul*, 66 NY2d 570; *Harris v Uhlendorf*, 24 NY2d 463; *Hart v Blabey*, 287 NY 257; *True v True*, 63 AD3d 1145; *Matter of Gould v Board of Educ. of Sewanhaka Cent. High School Dist.*, 81 NY2d 446; *Symphony Space v Pergola Props.*, 214 AD2d 66; *Feldman v Grant*, 213 AD2d 340.) IV. Steven Simkin has no claim for unjust enrichment as to the disbursement of assets pursuant to a contract. (*IDT Corp. v Morgan Stanley Dean Witter & Co.*, 12 NY3d 132; *Goldman v Metropolitan Life Ins. Co.*, 5 NY3d 561; *EBC I, Inc. v Goldman, Sachs & Co.*, 5 NY3d 11; *Clark-Fitzpatrick, Inc. v Long Is. R.R. Co.*, 70 NY2d 382; *Salomon v North Br. & Mercantile Ins. Co. of N.Y.*, 215 NY 214; *Curtis v Albee*, 167 NY 360.) V. The parties' extensive releases bar Steven Simkin's claims. (*Mangini v McClurg*, 24 NY2d 556; *Gibli v Kadosh*, 279 AD2d 35; *Fleming v Ponziani*, 24 NY2d 105; *Littman v Magee*, 54 AD3d 14; *Centro Empresarial Cempresa S.A. v América Móvil, S.A.B. de C.V.*, 17 NY3d 269.)

*Paul, Weiss, Rifkind, Wharton & Garrison LLP*, New York City (*Allan J. Arffa, Mark H. Alcott, William J. Taylor, Jr.*, and *Susannah K. Howard* of counsel), for respondent. I. The complaint states a cause of action for reformation based on mutual mistake. (*Leon v Martinez*, 84 NY2d 83; *EBC I, Inc. v Goldman, Sachs & Co.*, 5 NY3d 11; *Morone v Morone*, 50 NY2d 481; *People v Coventry First LLC*, 13 NY3d 108; *Hurrell-Harring v State of New York*, 15 NY3d 8; *Lanzi v Brooks*, 43 NY2d 778; *Pludeman v Northern Leasing Sys., Inc.*, 10 NY3d 486; *I. Shulman & Son v Jorling*, 189 AD2d 1012; *M & T Bank Corp. v Gemstone CDO VII, Ltd.*, 23 Misc 3d 1105[A], 2009 NY Slip Op 50590[U], 68 AD3d 1747; *Matter of Gould v Board of Educ. of Sewanhaka Cent. High School Dist.*, 81 NY2d 446.) II. The concept of "finality" and *Commodity Futures Trading Commn. v Walsh* (17 NY3d 162 [2011]) do not preclude reformation of the agreement. (*Brender v Brender*, 199 AD2d 665; *Banker v Banker*, 56 AD3d 1105; *Levine v Levine*, 56 NY2d 42; *Christian v Christian*, 42 NY2d 63; *Surlak v Surlak*, 95 AD2d 371; *Rainbow v Swisher*, 72 NY2d 106; *Boronow v Boronow*, 71 NY2d 284; *Kojovic v Goldman*, 35 AD3d 65; *Merrill Lynch, Pierce, Fenner & Smith v Benjamin*, 1 AD3d 39; *Welsh v Lawler*, 282

AD2d 977.) III. The agreement does not preclude Steven Simkin's unjust enrichment claim. (*IDT Corp. v Morgan Stanley Dean Witter & Co.*, 12 NY3d 132; *IIG Capital LLC v Archipelago, L.L.C.*, 36 AD3d 401; *Heller, Horowitz & Feit v Stage II Apparel Corp.*, 270 AD2d 58; *Joseph Sternberg, Inc. v Walber 36th St. Assoc.*, 187 AD2d 225.) IV. The releases do not bar Steven Simkin's claims. (*House v Wechsler*, 104 App Div 124; *Mangini v McClurg*, 24 NY2d 556; *Verstreate v Cohen*, 242 AD2d 862; *Metz v Metz*, 175 AD2d 938; *Curry v Episcopal Health Servs.*, 248 AD2d 662; *Schroeder v Connelly*, 46 AD3d 1439; *Gibli v Kadosh*, 279 AD2d 35; *Carola v NKO Contr. Corp.*, 205 AD2d 931; *Centro Empresarial Cempresa S.A. v América Móvil, S.A.B. de C.V.*, 17 NY3d 269.)

**OPINION OF THE COURT**

GRAFFEO, J.

The primary issue before us is whether plaintiff has presented facts sufficient to support the reformation or setting aside of the parties' marital settlement agreement based on a claim of mutual mistake pertaining to an investment account. We conclude that plaintiff has failed to state a cause of action under CPLR 3211 and therefore dismiss the amended complaint.

Plaintiff Steven Simkin (husband) and defendant Laura Blank (wife) married in 1973 and have two children. Husband is a partner at a New York law firm and wife, also an attorney, is employed by a university. After almost 30 years of marriage, the parties separated in 2002 and stipulated in 2004 that the cut-off date for determining the value of marital assets would be September 1, 2004. The parties, represented by counsel, spent two years negotiating a detailed 22-page settlement agreement, executed in June 2006. In August 2006, the settlement agreement was incorporated, but not merged, into the parties' final judgment of divorce.

The settlement agreement set forth a comprehensive division of marital property. Husband agreed to pay wife $6,250,000 "[a]s and for an equitable distribution of property . . . and in satisfaction of the Wife's support and marital property rights." In addition, wife retained title to a Manhattan apartment (subject to a $370,000 mortgage), an automobile, her retirement accounts and any "bank, brokerage and similar financial accounts in her name." Upon receipt of her distributive payment, wife agreed to convey her interest in the Scarsdale marital residence to husband. Husband received title to three automobiles

and kept his retirement accounts, less $368,000 to equalize the value of the parties' retirement accounts. Husband further retained "bank, brokerage and similar financial accounts" that were in his name, two of which were specifically referenced—his capital account as a partner at the law firm and a Citibank account.

The agreement also contained a number of mutual releases between the parties. Each party waived any interest in the other's law license and released or discharged any debts or further claims against the other. Although the agreement acknowledged that the property division was "fair and reasonable," it did not state that the parties intended an equal distribution or other designated percentage division of the marital estate. The only provision that explicitly contemplated an equal division was the reference to equalizing the values of the parties' retirement accounts. The parties further acknowledged that the settlement constituted

> "an agreement between them with respect to any and all funds, assets or properties, both real and personal, including property in which either of them may have an equitable or beneficial interest wherever situated, now owned by the parties or either of them, or standing in their respective names or which may hereafter be acquired by either of them, and all other rights and obligations arising out of the marital relationship."

At the time the parties entered into the settlement, one of husband's unspecified brokerage accounts was maintained by Bernard L. Madoff Investment Securities (the Madoff account). According to husband, the parties believed the account was valued at $5.4 million as of September 1, 2004, the valuation date for marital assets. Husband withdrew funds from this account to pay a portion of his distributive payment owed wife in 2006, and continued to invest in the account subsequent to the divorce. In December 2008, Bernard Madoff's colossal Ponzi scheme was publicly exposed and Madoff later pleaded guilty to federal securities fraud and related offenses.

As a result of the disclosure of Madoff's fraud, in February 2009—about 2½ years after the divorce was finalized—husband commenced this action against wife alleging two causes of action: (1) reformation of the settlement agreement predicated on a mutual mistake and (2) unjust enrichment. The amended

complaint asserts that the settlement agreement was intended to accomplish an "approximately equal division of [the couple's] marital assets," including a 50-50 division of the Madoff account. To that end, the amended complaint states that $2,700,000 of wife's $6,250,000 distributive payment represented her "share" of the Madoff account. Husband alleges that the parties' intention to equally divide the marital estate was frustrated because both parties operated under the "mistake" or misconception as to the existence of a legitimate investment account with Madoff which, in fact, was revealed to be part of a fraudulent Ponzi scheme. The amended complaint admits, however, that funds were previously " 'withdrawn' from the 'Account' " by husband and applied to his obligation to pay wife.

In his claim for reformation, husband requests that the court "determine the couple's true assets with respect to the Madoff [a]ccount" and alter the settlement terms to reflect an equal division of the actual value of the Madoff account. The second cause of action seeks restitution from wife "in an amount to be determined at trial" based on her unjust enrichment arising from husband's payment of what the parties mistakenly believed to be wife's share of the Madoff account. Wife moved to dismiss the amended complaint on several grounds, including a defense founded on documentary evidence (see CPLR 3211 [a] [1]) and for failure to state a cause of action (see CPLR 3211 [a] [7]).

Supreme Court granted wife's motion and dismissed the amended complaint. The Appellate Division, with two Justices dissenting, reversed and reinstated the action (80 AD3d 401 [1st Dept 2011]). The Appellate Division granted wife leave to appeal on a certified question (2011 NY Slip Op 70450[U] [2011]), and we now reverse and reinstate Supreme Court's order of dismissal.

Wife argues that the Appellate Division erred in reinstating the amended complaint because the allegations, even if true, fail to appropriately establish the existence of a mutual mistake at the time the parties entered into their settlement agreement. Rather, she claims that, at most, the parties may have been mistaken as to the value of the Madoff account, but not its existence. Wife also contends that allowing husband's claims to go forward years after the division of property and issuance of a divorce decree would undermine policy concerns regarding finality in divorce cases. Husband responds that the amended complaint states a viable claim because the parties were both

unaware and misled as to the legitimacy of the Madoff account, which, in husband's view, "did not in fact ever exist" due to the fraud occasioned on investors.

On a motion to dismiss under CPLR 3211, the pleading is to be given a liberal construction, the allegations contained within it are assumed to be true and the plaintiff is to be afforded every favorable inference (*see ABN AMRO Bank, N.V. v MBIA Inc.*, 17 NY3d 208, 227 [2011]). At the same time, however, "allegations consisting of bare legal conclusions as well as factual claims flatly contradicted by documentary evidence are not entitled to any such consideration" (*Maas v Cornell Univ.*, 94 NY2d 87, 91 [1999] [internal quotation marks omitted]). Moreover, a claim predicated on mutual mistake must be pleaded with the requisite particularity necessitated under CPLR 3016 (b).

Marital settlement agreements are judicially favored and are not to be easily set aside (*see McCoy v Feinman*, 99 NY2d 295, 302 [2002]; *Christian v Christian*, 42 NY2d 63, 71-72 [1977]). Nevertheless, in the proper case, an agreement may be subject to rescission or reformation based on a mutual mistake by the parties (*see Matter of Gould v Board of Educ. of Sewanhaka Cent. High School Dist.*, 81 NY2d 446, 453 [1993]; *Chimart Assoc. v Paul*, 66 NY2d 570, 573 [1986]). Similarly, a release of claims may be avoided due to mutual mistake (*see Centro Empresarial Cempresa S.A. v América Móvil, S.A.B. de C.V.*, 17 NY3d 269, 276 [2011]). Based on these contract principles, the parties here agree that this appeal turns on whether husband's amended complaint states a claim for relief under a theory of mutual mistake.

We have explained that "[t]he mutual mistake must exist at the time the contract is entered into and must be substantial" (*Gould*, 81 NY2d at 453). Put differently, the mistake must be "so material that . . . it goes to the foundation of the agreement" (*Da Silva v Musso*, 53 NY2d 543, 552 [1981] [internal quotation marks and citations omitted]; *see also* 27 Lord, Williston on Contracts § 70:12 [4th ed] ["The parties must have been mistaken as to a basic assumption of the contract . . . Basic assumption means the mistake must vitally affect the basis upon which the parties contract"]). Court-ordered relief is therefore reserved only for "exceptional situations" (*Da Silva*, 53 NY2d at 552 [internal quotation marks omitted]). The premise underlying the doctrine of mutual mistake is that "the agreement as expressed, in some material respect, does not represent

the meeting of the minds of the parties" (*Gould*, 81 NY2d at 453 [internal quotation marks and citations omitted]).

Although we have not addressed mutual mistake claims in the context of marital settlement agreements, the parties cite a number of Appellate Division cases that have analyzed this issue. Husband relies on *True v True* (63 AD3d 1145, 1146 [2d Dept 2009]), where the settlement agreement provided that the husband's stock awards from his employer would be "divided 50-50 in kind" and recited that 3,655 shares were available for division between the parties. After the wife redeemed her half of the shares, the husband learned that only 150 shares remained and brought an action to reform the agreement, arguing that the parties mistakenly specified the gross number of shares (3,655) rather than the net number that was actually available for distribution. The Second Department agreed and reformed the agreement to effectuate the parties' intent to divide the shares equally, holding that the husband had established "that the parties' use of 3,655 gross shares was a mutual mistake because it undermined their intent to divide the *net* shares available for division, 50-50 in kind" (*id.* at 1148).

Other cases relied on by husband involve marital settlement agreements that were set aside or reformed because a mutual mistake rendered a portion of the agreement impossible to perform. In *Banker v Banker* (56 AD3d 1105 [2008]), the Third Department reformed a provision of a marital settlement that required the subdivision of a parcel of real property because the parties were unaware of a restrictive covenant against further subdivision. Similarly, in *Brender v Brender* (199 AD2d 665 [1993]), the Third Department set aside a settlement provision that allowed the wife to purchase health insurance through her husband's plan where both parties were mistaken in their belief that such coverage was available.

Wife in turn points to appellate cases denying a spouse's request to reopen a marital settlement agreement where the final value of an asset was not what the parties believed at the time of the divorce (*see Greenwald v Greenwald*, 164 AD2d 706, 721 [1st Dept 1991], *lv denied* 78 NY2d 855 [1991] [stating that "posttrial changes in value may not be used to reallocate the distribution of marital assets"]). In *Kojovic v Goldman* (35 AD3d 65 [2006], *lv denied* 8 NY3d 804 [2007]), for example, the First Department dismissed the wife's reformation and rescission claims where the husband unexpectedly sold his interest in a company for $18 million after the divorce. And in *Etzion v*

*Etzion* (62 AD3d 646 [2009], *lv dismissed* 13 NY3d 824 [2009]), the Second Department rejected the wife's mutual mistake claim where the market value of the husband's warehouse property substantially increased in value after the city adopted a rezoning plan subsequent to the parties' settlement.

Applying these legal principles, we are of the view that the amended complaint fails to adequately state a cause of action based on mutual mistake. As an initial matter, husband's claim that the alleged mutual mistake undermined the foundation of the settlement agreement, a precondition to relief under our precedents, is belied by the terms of the agreement itself. Unlike the settlement agreement in *True* that expressly incorporated a "50-50" division of a stated number of stock shares, the settlement agreement here, on its face, does not mention the Madoff account, much less evince an intent to divide the account in equal or other proportionate shares (*see Centro*, 17 NY3d at 277 [explaining that "courts should be extremely reluctant to interpret an agreement as impliedly stating something which the parties have neglected to specifically include"] [internal quotation marks and citation omitted]). To the contrary, the agreement provides that the $6,250,000 payment to wife was "in satisfaction of [her] support and marital property rights," along with her release of various claims and inheritance rights. Despite the fact that the agreement permitted husband to retain title to his "bank, brokerage and similar financial accounts" and enumerated two such accounts, his alleged $5.4 million Madoff investment account is neither identified nor valued. Given the extensive and carefully negotiated nature of the settlement agreement, we do not believe that this presents one of those "exceptional situations" (*Da Silva*, 53 NY2d at 552 [internal quotation marks omitted]) warranting reformation or rescission of a divorce settlement after all marital assets have been distributed.

Even putting the language of the agreement aside, the core allegation underpinning husband's mutual mistake claim—that the Madoff account was "nonexistent" when the parties executed their settlement agreement in June 2006—does not amount to a "material" mistake of fact as required by our case law. The premise of husband's argument is that the parties mistakenly believed that they had an investment account with Bernard Madoff when, in fact, no account ever existed. In

husband's view, this case is no different from one in which parties are under a misimpression that they own a piece of real or personal property but later discover that they never obtained rightful ownership, such that a distribution would not have been possible at the time of the agreement. But that analogy is not apt here. Husband does not dispute that, until the Ponzi scheme began to unravel in late 2008—more than two years after the property division was completed—it would have been possible for him to redeem all or part of the investment. In fact, the amended complaint contains an admission that husband was able to withdraw funds (the amount is undisclosed) from the account in 2006 to partially pay his distributive payment to wife. Given that the mutual mistake must have existed at the time the agreement was executed in 2006 (*see Gould*, 81 NY2d at 453), the fact that husband could no longer withdraw funds years later is not determinative.*

This situation, however sympathetic, is more akin to a marital asset that unexpectedly loses value after dissolution of a marriage; the asset had value at the time of the settlement but the purported value did not remain consistent. Viewed from a different perspective, had the Madoff account or other asset retained by husband substantially increased in worth after the divorce, should wife be able to claim entitlement to a portion of the enhanced value? The answer is obviously no. Consequently, we find this case analogous to the Appellate Division precedents denying a spouse's attempt to reopen a settlement agreement based on post-divorce changes in asset valuation.

■ Finally, husband's unjust enrichment claim likewise fails to state a cause of action. It is well settled that, "[w]here the parties executed a valid and enforceable written contract governing a particular subject matter, recovery on a theory of unjust enrichment for events arising out of that subject matter is ordinarily precluded" (*IDT Corp. v Morgan Stanley Dean Witter & Co.*, 12 NY3d 132, 142 [2009]).

Accordingly, the order of the Appellate Division should be reversed, with costs, the order of Supreme Court reinstated, and the certified question answered in the negative.

---

* Husband notes in his brief that the Madoff account may, at a future point, have some value depending on how successful the trustee for the liquidation of Bernard L. Madoff Investment Securities is in recovering and distributing property to customers (*see In re Bernard L. Madoff Inv. Sec. LLC*, 654 F3d 229 [2d Cir 2011]).

56

Chief Judge Lippman and Judges Ciparick, Read, Pigott and Jones concur; Judge Smith taking no part.

Order reversed, etc.