Matter of Husisian (2020 NY Slip Op 06188)





Matter of Husisian


2020 NY Slip Op 06188


Decided on October 29, 2020


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: October 29, 2020

529848

[*1]In the Matter of the Estate of Leon Husisian, Deceased. Nancy Husisian, Individually and as Executor of the Estate of Leon Husisian, Deceased. Appellant; Manufacturers and Traders Trust Company, Respondent, et al., Respondents. (Proceeding No. 1.)
In the Matter of the Estate of Leon Husisian, Deceased. Nancy Husisian, Individually and as Cotrustee of the Leon Husisian Testamentary Trust, Appellant; Manufacturers and Traders Trust Company, Respondent, et al., Respondents. (Proceeding No. 2.)

Calendar Date: September 14, 2020

Before: Garry, P.J., Clark, Devine, Pritzker and Colangelo, JJ.


Steven W. Barnstead, Elmira, for appellant.
Coughlin & Gerhart, LLP, Binghamton (Zachary D. Morahan of counsel), for respondent.



Pritzker, J.
Appeals from an order and an amended order of the Surrogate's Court of Chemung County (Baker, S.), entered June 4, 2019 and June 17, 2019, which (1) dismissed petitioner's application, in proceeding No. 1, directing the distribution of the proceeds from the sale of certain real property to petitioner, and (2) dismissed petitioner's application, in proceeding No. 2, authorizing a distribution from the Leon Husisian Testamentary Trust to petitioner.
Following the death of Leon Husisian (hereinafter decedent), his will was admitted to probate in February 2014 and letters testamentary were issued to petitioner, decedent's wife. As relevant here, the will provides that the residue of decedent's estate vests in the trustees of a trust. The net income of this trust is to be paid to, or used for the benefit of, petitioner at least quarterly. The principal of the trust may be used for "the care, support, maintenance, health, general welfare and use of" petitioner during her life, as deemed proper by the disinterested trustee. The will further provided that the remainder of the trust shall be bequeathed to decedent's descendants, per stirpes, who are living at the time petitioner dies. In September 2015, letters of trusteeship were issued to petitioner and respondent Manufacturers and Traders Trust Company as cotrustees of decedent's testamentary trust. In 2017, petitioner made a request to Wilmington Trust, on behalf of Manufacturers, to pay $150,000 for the educational expenses of two grandchildren of petitioner and decedent (hereinafter the grandchildren). Manufacturers declined petitioner's requested distribution.
In October 2018, petitioner simultaneously commenced these two proceedings. In the first proceeding, petitioner sought a decree directing that the proceeds from the sale of four lots of real property located in the Village of Elmira Heights, Chemung County, titled solely in decedent's name, be paid to her in her individual capacity.[FN1] The petition was premised on the claim that a 1996 estate plan inadvertently placed the four lots solely in decedent's name. According to the petition, petitioner had contributed funds to purchase the lots and paid all expenses associated therewith. Petitioner requested either reformation of the deeds or the imposition of a constructive trust. In the second proceeding, petitioner sought a decree authorizing a distribution from decedent's testamentary trust to pay for the educational expenses of the grandchildren. The parties appeared before Surrogate's Court, after which memoranda of law were filed, at the court's request, by petitioner regarding both of her petitions. Surrogate's Court dismissed both petitions, but, on the petition regarding the four vacant lots, awarded petitioner a sum of $45,552.62 for the expenses that petitioner paid towards maintaining the lots, as well as one fifth of the sale proceeds. Petitioner appeals.
We affirm. We turn first to petitioner's contention that Surrogate's Court erred in dismissing the first proceeding seeking to have the proceeds from the sale of the four vacant lots distributed to petitioner in her individual capacity, either by reforming the deed or imposing a constructive trust. As to reformation, "[a] party seeking reformation must establish, by clear and convincing evidence, that the writing in question was executed under mutual mistake or unilateral mistake coupled with fraud" (Timber Rattlesnake, LLC v Devine, 117 AD3d 1291, 1292 [2014] [internal quotation marks and citations omitted], lv denied 24 NY3d 904 [2014]; see Tompkins Fin. Corp. v John M. Floyd & Assoc., Inc., 144 AD3d 1252, 1255 [2016]). Given that petitioner did not establish, or even allege, that there was fraud involved, she failed to establish unilateral mistake where the showing of fraud is required (see Barclay Arms v Barclay Arms Assoc., 74 NY2d 644, 646-647 [1989]; Greater N.Y. Mut. Ins. Co. v United States Underwriters Ins. Co., 36 AD3d 441, 443 [2007]). To claim that there was mutual mistake, it must be established that "the parties have reached an oral agreement and, unknown to either, the signed writing does not express that agreement" (Stache Invs. Corp. v Ciolek, 174 AD3d 1393, 1394 [2019] [internal quotation marks and citation omitted]; see Gunther v Vilceus, 142 AD3d 639, 640 [2016], lv denied 28 NY3d 910 [2016]). Here, petitioner failed to show that there was an oral agreement that the vacant lots would be owned as tenants by the entirety (see Chimart Assoc. v Paul, 66 NY2d 570, 574-575 [1986]; compare Gunther v Vilceus, 142 AD3d at 640). Instead, the fact that only one of the five vacant lots was jointly owned by decedent and petitioner while the remaining four lots were owned in decedent's name alone reflects deliberate intent rather than a mistake. Thus, Surrogate's Court properly denied petitioner's request for reformation of the deed.
Nor did Surrogate's Court err in denying petitioner's request to impose a constructive trust and distribute the proceeds from the sale of the four vacant lots to her because she secured a loan to acquire the property and spent taxes, maintenance expenses and costs associated with selling the lots. To show entitlement to a constructive trust, petitioner must establish "a confidential or fiduciary relationship, a promise, a transfer in reliance thereon and unjust enrichment" (Kain Dev., LLC v Krause Props., LLC, 130 AD3d 1229, 1234 [2015] [internal quotation marks and citations omitted]; see Baker v Harrison, 180 AD3d 1210, 1211-1212 [2020]). Here, although there was a confidential relationship between petitioner and decedent due to their marital status, the record does not reveal that there was a promise that the two would jointly own the four vacant lots, that petitioner transferred monies to purchase the properties in reliance of that promise or that decedent's enrichment was unjust as a result (see generally Paragon v Paragon, 164 AD3d 1460, 1462 [2018]; Mazzei v Kyriacou, 139 AD3d 823, 824 [2016]); thus, petitioner is not entitled to a constructive trust.
Lastly, Surrogate's Court properly dismissed petitioner's second proceeding seeking reimbursement for the grandchildren's educational expenses from the testamentary trust. Pursuant to EPTL 7-1.6 (b), a court "may in its discretion make an allowance from principal to any income beneficiary whose support or education is not sufficiently provided for . . . provided that the court . . . is satisfied that the original purpose of the creator of the trust cannot be carried out and that such allowance effectuates the intention of the creator." "[T]he primary purpose of a will construction proceeding is to ascertain and give effect to the testator's intent[, which] is to be gleaned from a sympathetic reading of the will as an entirety and in view of all the facts and circumstances under which the provisions of the will were framed" (Matter of McCabe, 269 AD2d 727, 728 [2000] [internal quotation marks and citations omitted]; see Matter of Ash, 180 AD3d 1288, 1290 [2020]). "[W]here the testator's intent may be ascertained from within the four corners of the document, resort to extrinsic evidence is inappropriate" (Matter of McCabe, 269 AD2d at 728; see Matter of Cord, 58 NY2d 539, 544 [1983]).
Here, decedent's will unambiguously states that the trust income should be used for "the care, support, maintenance, health, general welfare and use of [petitioner], during her life." Petitioner asserts that the word "use" supports her claim that decedent intended to provide the trustees with broad discretion that allows the distribution of the trust to be used for the grandchildren's educational expenses. However, when gleaning decedent's intent from the entirety of the will, the word "use" does not give unbridled discretion to the trustees to distribute the income for such purpose. Rather, when considering that the will provides that decedent's descendants who survive petitioner receive the remainder of the trust at the time of her death, it may be gleaned that it was not decedent's intent that the trust provide for the grandchildren's educational expenses during petitioner's lifetime (see Matter of Dawe, 179 AD3d 1182, 1183-1184 [2020]; Matter of Bonanno, 151 AD3d 718, 719 [2017]). This Court cannot address petitioner's remaining contention that Surrogate's Court deprived her of any opportunity to submit evidence related to either proceeding as it was raised for the first time in her reply brief (see Reed v New York State Elec. & Gas Corp., 183 AD3d 1207, 1209 [2020]; Spera v Spera, 71 AD3d 661, 664 [2010]).
Garry, P.J., Clark, Devine and Colangelo, JJ., concur.
ORDERED that the order and amended order are affirmed, with costs.



Footnotes

Footnote 1: There were five parcels in total, only one of which was titled to decedent and petitioner as tenants by the entirety.