Iskalo Elec. Tower LLC v Stantec Consulting Servs., Inc. (2023 NY Slip Op 04287)

Iskalo Elec. Tower LLC v Stantec Consulting Servs., Inc.

2023 NY Slip Op 04287

Decided on August 11, 2023

Appellate Division, Fourth Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on August 11, 2023
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: WHALEN, P.J., PERADOTTO, LINDLEY, OGDEN, AND GREENWOOD, JJ.

560 CA 22-00788

[*1]ISKALO ELECTRIC TOWER LLC, AND DOWNTOWN CBD INVESTORS LLC, PLAINTIFFS-APPELLANTS-RESPONDENTS,
v
STANTEC CONSULTING SERVICES, INC., DEFENDANT-RESPONDENT-APPELLANT. 

THE GARAS LAW FIRM, LLP, WILLIAMSVILLE (JOHN C. GARAS OF COUNSEL), FOR PLAINTIFFS-APPELLANTS-RESPONDENTS.
HARTER, SECREST & EMERY LLP, ROCHESTER (F. PAUL GREENE OF COUNSEL), FOR DEFENDANT-RESPONDENT-APPELLANT. 

 Appeal and cross-appeal from an order of the Supreme Court, Erie County (Donna M. Siwek, J.), entered April 11, 2022. The order granted in part and denied in part plaintiffs' motion for summary judgment. 
It is hereby ORDERED that the order so appealed from is unanimously modified on the law by denying plaintiffs' motion in its entirety and reinstating defendant's eleventh counterclaim and as modified the order is affirmed without costs.
Memorandum: Plaintiffs, limited liability companies managed by nonparty Iskalo Development Corp., commenced this action seeking damages for defendant's alleged breach of two commercial leases. One lease (Electric Tower lease) was executed between plaintiff Iskalo Electric Tower LLC (Iskalo) and defendant for commercial space in a certain building (Electric Tower building), and the other lease (East Huron Street lease) was executed by plaintiff Downtown CBD Investors LLC (CBD) and defendant to provide for warehouse and parking space near the Electric Tower building (East Huron Street premises). It was imperative to defendant to obtain parking space near the Electric Tower building and, as a result, the two leases contained provisions tying them together and allegedly permitting defendant to terminate both leases should certain contingencies relating to the parking area not occur.
Following a series of motions and appeals (Iskalo Elec. Tower LLC v Stantec Consulting Servs., Inc., 174 AD3d 1420 [4th Dept 2019] [Iskalo III]; Iskalo Elec. Tower LLC v Stantec Consulting Servs., Inc., 113 AD3d 1105 [4th Dept 2014] [Iskalo II]; Iskalo Elec. Tower LLC v Stantec Consulting Servs., Inc., 79 AD3d 1605 [4th Dept 2010] [Iskalo I]), Supreme Court granted defendant leave to file an amended answer asserting a counterclaim for reformation of the East Huron Street lease (10th counterclaim) as well as a counterclaim for breach of the Electric Tower lease regarding, inter alia, build-out costs (11th counterclaim).
Plaintiffs thereafter moved for summary judgment dismissing the 10th counterclaim and partially dismissing the 11th counterclaim. The court granted that part of the motion with respect to the 11th counterclaim, awarding plaintiffs summary judgment dismissing the 11th counterclaim insofar as it challenged Iskalo's attempt to recover build-out costs that had been the subject of prior discussions between the parties. The court found that defendant had waived its right to challenge those particular costs due to its failure to insist on compliance with certain provisions of the Electric Tower lease and its failure to invoke the notice and cure provisions contained in section 30.17 of that lease. Plaintiffs appeal, and defendant cross-appeals. Although we conclude that the court properly denied that part of plaintiffs' motion with respect to the 10th counterclaim, we agree with defendant that the court erred in granting that part of the motion with respect to the 11th counterclaim, and we modify the order accordingly.
Plaintiffs contend on their appeal that the law of the case doctrine bars defendant's 10th counterclaim and that the court thus erred in denying their motion insofar as it sought summary judgment dismissing the 10th counterclaim. We reject that contention inasmuch as the issue whether the East Huron Street lease should be reformed was not "necessarily resolved on the merits in a prior decision" (Matter of Kirsch v Board of Educ. of Williamsville Cent. Sch. Dist., 184 AD3d 1085, 1086 [4th Dept 2020], lv dismissed 36 NY3d 1081 [2021] [internal quotation marks omitted]; see Pettit v County of Lewis, 145 AD3d 1650, 1651 [4th Dept 2016]). "The law of the case doctrine . . . precludes relitigating an issue decided in an ongoing action where there previously was a full and fair opportunity to address the issue" (Town of Massena v Healthcare Underwriters Mut. Ins. Co., 40 AD3d 1177, 1179 [3d Dept 2007]; see Matter of Murtaugh v New York State Dept. of Envtl. Conservation [appeal No. 2], 134 AD3d 1392, 1394 [4th Dept 2015]). It also bars claims that " 'could have been raised on a prior appeal' " (Juhasz v Juhasz, 101 AD3d 1690, 1690 [4th Dept 2012]; see Murtaugh, 134 AD3d at 1394). Here, however, defendant has yet to be given a full and fair opportunity to address the issue of reformation, and we affirmatively declined to address that issue on the merits in Iskalo I (79 AD3d at 1608).
Moreover, the law of the case doctrine is not implicated because "the court did not alter a ruling by another court of coordinate jurisdiction but rather its own ruling" (Kleinser v Astarita, 61 AD3d 597, 598 [1st Dept 2009]; see Commercial Tenant Servs., Inc. v Northern Leasing Sys., Inc., 131 AD3d 895, 896-897 [1st Dept 2015]). Regardless, "this Court is not bound by the doctrine of law of the case, and may make its own determinations" (Micro-Link, LLC v Town of Amherst, 155 AD3d 1638, 1642 [4th Dept 2017] [internal quotation marks omitted]; see Smalley v Harley-Davidson Motor Co. Group LLC, 134 AD3d 1490, 1492 [4th Dept 2015]; see generally Martin v City of Cohoes, 37 NY2d 162, 165 [1975], rearg denied 37 NY2d 817 [1975]).
Contrary to plaintiffs' further contentions, the court properly denied that part of their motion with respect to the 10th counterclaim, seeking reformation of section 3.1 (f) of the East Huron Street lease. That section as written provides, in pertinent part, that "[n]otwithstanding anything to the contrary contained herein, to the extent that [CBD] is not able to cause Delivery of Possession [of the East Huron Street premises] to occur by December 1, 2005, [CBD] will provide notice to [defendant] on or before noon, October 31, 2005, so that [defendant] may extend the lease for its existing warehouse/parking facility to accommodate the delay in Delivery of Possession. In the event [that CBD] does not deliver such notice and Delivery of Possession does not occur by December 1, 2005, [CBD] shall, for a period of up to three months after December 1, 2005, use its best efforts to locate or construct alternative leased premises within 500 feet of [the Electric Tower building]. During such three-month period, [CBD] shall reimburse [defendant] for the rent differential between its existing location and the rent that would have otherwise been payable under the terms of this Lease had Delivery of Possession occurred on December 1, 2005 . . . If at the end of such three-month period, [CBD] is unable to secure such alternative space, [defendant] shall have the right, for a period of thirty (30) days thereafter, to elect to terminate this Lease and to terminate the [Electric Tower] lease" (emphasis added).
We previously determined that CBD gave defendant the requisite notice (see Iskalo I, 79 AD3d at 1607). It is undisputed, however, that CBD did not deliver possession of the East Huron Street premises and did not locate or construct an alternative leased premises within 500 feet of the Electric Tower building. Defendant contends that the second sentence of section 3 (f) should be reformed by replacing the word "and" with the word "or." That sentence would then provide: "In the event [that CBD] does not deliver such notice [or] Delivery of Possession does not occur by December 1, 2005, [CBD] shall, for a period of up to three months after December 1, 2005, use its best efforts to locate or construct alternative leased premises within 500 feet of [the Electric Tower building]." Contrary to plaintiffs' contentions, there are triable issues of fact whether the East Huron Street lease should be reformed.
"Reformation is not granted for the purpose of alleviating a hard or oppressive bargain, but rather to restate the intended terms of an agreement when the writing that memorializes that agreement is at variance with the intent of both parties" (George Backer Mgt. Corp. v Acme Quilting Co., 46 NY2d 211, 219 [1978]). The party seeking reformation bears the burden of establishing by clear and convincing evidence either that there was a mutual mistake or that there was a unilateral mistake procured by fraud (see Judge v Travelers Ins. Co., 262 AD2d 983, 983 [4th Dept 1999]; see generally Chimart Assoc. v Paul, 66 NY2d 570, 573 [1986]). Here, [*2]however, we are concerned with plaintiffs' motion for summary judgment and, as a result, plaintiffs bore the burden of establishing as a matter of law that there was no merit to defendant's counterclaim for reformation (see generally Zuckerman v City of New York, 49 NY2d 557, 562 [1980]). Plaintiffs failed to meet their burden.
"Because the thrust of a reformation claim is that a writing does not set forth the actual agreement of the parties, generally neither the parol evidence rule nor the Statute of Frauds applies to bar proof, in the form of parol or extrinsic evidence, of the claimed agreement" (Chimart Assoc., 66 NY2d at 573). Plaintiffs' own evidence raises triable issues of fact whether the East Huron Street lease should be reformed. To begin with, the East Huron Street lease, as written, is illogical inasmuch as it does not make sense for the parties to require a failure of notice and a failure of delivery as a prerequisite to defendant's right to terminate the leases. It is clear from the record that defendant's goal was to find one centralized location for all of its operations. Thus, its primary concern in entering the East Huron Street lease was to find a place, close to the Electric Tower building, to park its expensive and specialized vehicles. That was the nonnegotiable aspect of its dealings with plaintiffs. In that regard, delivery was required to fulfill defendant's goal in entering the leases, whereas notice was needed only to allow defendant to extend its then-existing lease for storage of its vehicles.
CBD failed to deliver either the East Huron Street premises or any alternative parking within a 500-foot area of the Electric Tower building. In light of defendant's purpose for entering the leases, it makes no sense for the termination clause to be obviated by CBD's mere notice that it could not provide a parking area. Indeed, the idea that defendant could not terminate the leases in response to CBD's failure to provide a parking area would be contrary to the entire purpose of section 3.1 (f) of the East Huron Street lease. Moreover, the parties' conduct subsequent to that notice demonstrates an understanding between the parties that the termination clause had been triggered. When the three-month grace period mentioned in section 3.1 (f) was nearing a close, plaintiffs' own attorney conceded in a letter that CBD had only two options: to proceed with an expensive build out of the East Huron Street premises, thereby worsening its position, in the hope that defendant "will not exercise its termination right" or to "wait out the thirty day termination period." Although plaintiffs' attorney later stated that he wrote that letter without having reviewed the East Huron Street lease and that his suggestion that defendant had a right of termination was thus made in error, such inconsistent statements create an issue of credibility that warrants denial of summary judgment (see Hale v Meadowood Farms of Cazenovia, LLC, 104 AD3d 1330, 1332 [4th Dept 2013]; Dietzen v Aldi Inc. [New York], 57 AD3d 1514, 1514 [4th Dept 2008]). As defendant correctly states, " '[t]he best evidence of the intent of parties to a contract is their conduct after the contract is formed' " (T.L.C. W., LLC v Fashion Outlets of Niagara, LLC, 60 AD3d 1422, 1424 [4th Dept 2009]; see Ames v County of Monroe, 162 AD3d 1724, 1727 [4th Dept 2018]). Both plaintiffs' attorney and defendant's attorney operated under the belief that defendant had properly invoked the termination provision, and they acted accordingly (see e.g. Orangetown Home Improvements, LLC v Kiernan, 84 AD3d 902, 903-904 [2d Dept 2011]; Benderson Dev. Co. v Schwab Bros. Trucking, 64 AD2d 447, 457-458 [4th Dept 1978]). Inasmuch as plaintiffs failed to meet their initial burden of establishing as a matter of law that there was no mutual mistake warranting reformation, the burden never shifted to defendant to raise a triable issue of fact and the court properly denied that part of plaintiffs' motion with respect to the 10th counterclaim (see generally Alvarez v Prospect Hosp., 68 NY2d 320, 324 [1986]).
We reject plaintiffs' assertion that defendant improperly invoked the termination clause based only on CBD's failure to deliver the East Huron Street premises. In correspondence to plaintiffs, defendant noted that CBD had failed to deliver the East Huron Street premises "or a reasonably acceptable alternate space." Moreover, in its termination letter defendant stated without limitation that termination was based on "Article 3, paragraph f." Inasmuch as that section required either delivery of the East Huron Street premises or location of a suitable alternative, we conclude that defendant did not attempt to terminate the leases based only on CBD's failure to deliver the East Huron Street premises without regard to whether CBD might deliver alternate space.
We also reject plaintiffs' assertion that section 3.1 (f) was intended to apply only if CBD failed to "close" on the East Huron Street premises rather than failing to "deliver" the parking space required by defendant. Although there were references in some emails regarding CBD's [*3]potential inability to "close" on the East Huron Street premises, other emails discussed the consequences should CBD fail "to deliver the [East] Huron Street building." Even plaintiffs' principal admitted in his deposition that the purpose of section 3.1 (f) was to provide defendant protection in case CBD "fail[ed] to deliver" suitable parking space.
On its cross-appeal, defendant contends that the court erred in granting that part of plaintiffs' motion seeking summary judgment dismissing defendant's 11th counterclaim insofar as it challenges Iskalo's right to recover certain build-out costs related to the Electric Tower building. We agree. In their motion, plaintiffs contended that defendant waived its right to challenge those build-out costs because it was aware of those additional costs at a time when it could have invoked the notice-and-cure provisions of section 30.17 of the Electric Tower lease. The court agreed. It is undisputed that defendant was presented with a certain figure related to build-out costs that exceeded the amount allowed in the Electric Tower lease and that defendant thereafter made additional requests for work. It is also undisputed that those costs and additions were known to defendant before it signed the East Huron Street lease. The Electric Tower lease provided that all work in building out the Electric Tower lease space had to be approved by defendant, but defendant contended that the cost overruns were related to items for which it never gave approval. Although section 30.17 of the Electric Tower lease provided defendant with the right to notify Iskalo of an alleged default—here, Iskalo's failure to obtain defendant's approval for cost overruns—and to seek cure of that default, defendant did not exercise its right to do so.
We agree with defendant that its failure to enforce the notice-and-cure provision of the Electric Tower lease did not establish as a matter of law that defendant was waiving its right to challenge Iskalo's ability to recover the additional build-out costs. "Waiver is an intentional relinquishment of a known right and should not be lightly presumed" (Gilbert Frank Corp. v Federal Ins. Co., 70 NY2d 966, 968 [1988]; see Preferred Mut. Ins. Co. v Donnelly, 111 AD3d 1242, 1246 [4th Dept 2013], affd 22 NY3d 1169 [2014]). Waiver may be established "by such actions or failures to act as demonstrate an intent to relinquish such right" (Lannon v Lannon, 124 AD2d 1051, 1052 [4th Dept 1986] [emphasis added]; see Hadden v Consolidated Edison Co. of N.Y., 45 NY2d 466, 469 [1978]; Bolis v Fitzpatrick [appeal No. 2], 35 AD3d 1153, 1155 [4th Dept 2006]). Inasmuch as a waiver of contractual rights should not be lightly presumed, there must be evidence of " 'a clear manifestation of intent' to relinquish a contractual protection" (Fundamental Portfolio Advisors, Inc. v Tocqueville Asset Mgt., L.P., 7 NY3d 96, 104 [2006]; see Jefpaul Garage Corp. v Presbyterian Hosp. in City of N.Y., 61 NY2d 442, 448 [1984]). Generally, "the existence of an intent to forgo such a right is a question of fact" (Fundamental Portfolio Advisors, Inc., 7 NY3d at 104).
Plaintiffs' own submissions raise triable issues of fact whether defendant's failure to act, i.e., its failure to terminate the Electric Tower lease over a relatively minor default by Iskalo, should be deemed a waiver of its right to contest build-out costs that it did not approve, as required by the Electric Tower lease. Given that the waiver of contractual rights is not lightly presumed, we conclude that the court erred in granting that part of plaintiffs' motion with respect to defendant's 11th counterclaim.
As a final matter, we note that we do not address those contentions raised by the parties for the first time in their reply briefs as those contentions are not properly before us (see Brooks v City of Buffalo, 209 AD3d 1270, 1272 [4th Dept 2022]; Murnane Bldg. Contrs., LLC v Cameron Hill Constr., LLC, 159 AD3d 1602, 1605 [4th Dept 2018]). In addition, we note that defendant's reiteration in its reply brief of arguments it made in opposition to plaintiffs' appeal amounts to an improper sur-reply (see generally Scarpati v Kim, 124 AD3d 866, 868 [2d Dept 2015]).
Entered: August 11, 2023
Ann Dillon Flynn
Clerk of the Court