Romano v Kelly (2026 NY Slip Op 00042)

Romano v Kelly

2026 NY Slip Op 00042

Decided on January 8, 2026

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:January 8, 2026

CV-24-1246
[*1]Maria L. Romano, Respondent,
vPatrick J. Kelly, Appellant.

Calendar Date:November 12, 2025

Before:Pritzker, J.P., Fisher, McShan, Powers and Mackey, JJ.

Whiteman Osterman & Hanna LLP, Albany (J. Rochelle Cavanagh of counsel), for appellant.
Mack & Associates, PLLC, Albany (Joseph P. Drescher of counsel), for respondent.

McShan, J.
Appeal from an order of the Supreme Court (Denise Hartman, J.), entered June 24, 2024 in Albany County, which, among other things, partially granted plaintiff's motion to reform the parties' settlement agreement.
Plaintiff and defendant were unmarried partners for more than 25 years. Over the course of their relationship, plaintiff and defendant resided together, possessed joint funds and accounts and maintained common real property. Specifically, the parties acquired four parcels of real property during their relationship, utilizing one parcel as a residence and the other three as rental properties. As relevant here, in 2013, the parties bought a piece of real property located in the City of Watervliet, Albany County (hereinafter the Watervliet property). The Watervliet property was a duplex with a first and second floor unit and, unlike the other three parcels, was titled in both parties' names. In 2022, the parties separated, and plaintiff brought an action against defendant seeking, among other things, partition of the various pieces of real property, including the Watervliet property. The parties ultimately settled and signed a settlement agreement authored by plaintiff's counsel in December 2023.
The primary dispute in this proceeding arises from the terms of that settlement; specifically, with respect to the extent of the parties' ownership of the Watervliet property. The express terms of the settlement agreement purportedly provided plaintiff with, in pertinent part, the "exclusive use and occupancy" of the second-floor unit of the Watervliet property. The agreement further required defendant to sign a warranty deed that conveyed "all of his right, title and interest in and to" the second floor of the Watervliet property and that he would "relinquish any future rental payments, pro-rate any current or due rent as of signing . . . and turn over to [plaintiff] any security deposit for the property." However, plaintiff asserts that the parties had intended to convey the entire Watervliet property and that inclusion of the second-floor reference, where she was residing after the separation and at the time of the settlement agreement, was the product of a scrivener's error. Plaintiff learned of the error after defendant collected rents from the tenant located in the first-floor unit of the Watervliet property for the first two months of 2024. Plaintiff contacted defendant through counsel disputing defendant's right to do so and asserted that an addendum to the settlement agreement was necessary in order to reflect the parties' true intent that she be the sole owner of the entire Watervliet property, and defendant refused that request and proposed that plaintiff pay him further monies for the remainder of the property.
Plaintiff then moved, by order to show cause, for reformation of the settlement agreement and further sought counsel fees in connection with the order. Defendant opposed plaintiff's order to show cause and cross-moved for enforcement [*2]of the settlement agreement, asserting that plaintiff had violated a provision in the agreement requiring her to deposit $20,000 in a 529 educational savings account (see 26 USC § 529) for the parties' children. Defendant also sought an award of counsel fees pursuant to a clause in the agreement allowing for such fees in the event of a party's default or breach. Supreme Court partially granted plaintiff's motion and, in relevant part, reformed the agreement, eliminating the reference to the "2nd floor" of the Watervliet property in the settlement agreement. The court also partially granted defendant's cross-motion ordering plaintiff to fully fund the educational account. However, the court denied both parties' requests for counsel fees. Defendant appeals.[FN1]
We affirm. Turning first to Supreme Court's determination on plaintiff's request for reformation, "a party seeking reformation must establish, by clear and convincing evidence, that the writing in question was executed under mutual mistake or unilateral mistake coupled with fraud" (Sunnyview Farm, LLC v Levy Leverage, LLC, 223 AD3d 955, 960 [3d Dept 2024] [internal quotation marks, brackets and citations omitted]; see Matter of Husisian, 187 AD3d 1470, 1472 [3d Dept 2020]). As relevant here, "[t]o claim that there was mutual mistake, it must be established that the parties have reached an oral agreement and, unknown to either, the signed writing does not express that agreement" (Matter of Husisian, 187 AD3d at 1472 [internal quotation marks and citations omitted]; see Chimart Assoc. v Paul, 66 NY2d 570, 573 [1986]; Hilgreen v Pollard Excavating, Inc., 210 AD3d 1344, 1347 [3d Dept 2022]). "For a party to be entitled to reformation of a contract on the ground of mutual mistake, the mutual mistake must be material, i.e., it must involve a fundamental assumption of the contract" (True v True, 63 AD3d 1145, 1147 [2d Dept 2009] [citation omitted]). The moving party must also "demonstrate in no uncertain terms, not only that mistake or fraud exists, but exactly what was really agreed upon between the parties" (Hilgreen v Pollard Excavating, Inc., 193 AD3d 1134, 1137 [3d Dept 2021] [internal quotation marks and citations omitted], appeal dismissed 37 NY3d 1002 [2021]; see Tompkins Fin. Corp. v John M. Floyd & Assoc., Inc., 144 AD3d 1252, 1256 [3d Dept 2016]). "Because the thrust of a reformation claim is that a writing does not set forth the actual agreement of the parties, generally neither the parol evidence rule nor the [s]tatute of [f]rauds applies to bar proof, in the form of parol or extrinsic evidence, of the claimed agreement" (Chimart Assoc. v Paul, 66 NY2d at 573 [citations omitted]; accord Iskalo Elec. Tower LLC v Stantec Consulting Servs., Inc., 219 AD3d 1157, 1160 [4th Dept 2023]; see Potsdam Cent. Schools v Honeywell, Inc., 120 AD2d 798, 800 [3d Dept 1986]; see also Vasilakos v Gouvis, 296 AD2d 668, 669 [3d Dept 2002]).
Defendant contends that Supreme Court improperly determined the intent [*3]of the parties based upon a finding of what it believed was fair. By his telling, the true intention of the parties is reflected by the various references to the second floor throughout the agreement which establish that they were intentional. Further, defendant suggests that he would not have surrendered the entire property "without any consideration." In accord with Supreme Court, we find that defendant's assertions are flatly contradicted by the language of the agreement itself. As to the numerous references to the second floor, the context of those references within the first few mentions of the Watervliet property is revealing. Specifically, the first reference, which identifies plaintiff's current address, omits the appropriate reference to the second floor. More importantly, the second reference mistakenly states that the parties were the joint owners of only the second floor of the Watervliet property, which is indicative that the prevailing use of the second-floor qualifier is in error. We also look to the manner of conveyance provided in the settlement agreement, which further controverts defendant's suggestion of the parties' intent to only convey the second floor. The agreement specifically provided that defendant would provide a warranty deed, as well as any other documents necessary, that effectuated a transfer of "sole ownership." As posited by defendant, this language should be disregarded as the transfer of the first floor of the Watervliet property could be accomplished by executing a warranty deed that established a "Tenants in Common" arrangement. Regardless of whether such an arrangement was feasible, the implication that it was intended by the parties is not supported by the record when one considers that there is no mention of it anywhere in the agreement; to the contrary, as noted by Supreme Court, it is directly controverted by the aforementioned "sole ownership" language with respect to the contemplated transfer.
Also belying defendant's contentions is the language in the settlement agreement concerning his obligation to remove any encumbrances on the Watervliet property. Defendant agreed to satisfy any liens or mortgages on the property, which, as noted by Supreme Court, would provide no benefit to defendant if he were maintaining ownership of the first floor. Moreover, the agreement indicates that defendant would "relinquish any future rental payments, pro-rate any current or due rent" as of the date of signing "and turn over to [plaintiff] any security deposit for the property." That language is particularly notable inasmuch as plaintiff did not reside in the property pursuant to a rental agreement, rendering that provision meaningless if the parties solely intended to transfer the second floor. To the extent defendant suggests that he would not have transferred the Watervliet property without consideration, it is notable that the parties elected to proceed without the benefit of any property valuations and, as noted [*4]by Supreme Court, defendant agreed to execute the appropriate affidavit for a no-consideration transfer. His argument further ignores that the settlement was in contemplation of the parties' decision to define their respective rights to the four parcels that they had accumulated during their relationship.
Finally, and perhaps most significant, the settlement agreement purports to articulate the parties' rights to the four properties that they collectively amassed during their relationship, and defendant fails to provide any reasonable explanation as to why the parties would omit any reference to the first floor of the Watervliet property as part of their intent to transfer sole ownership of that floor to defendant.[FN2] To the contrary, there is no indication that defendant would receive sole ownership in the first floor of the Watervliet property by virtue of any language in the agreement when, prior to the agreement, he only possessed a joint ownership interest, which would remain the case if the language in the agreement were to remain unchanged. Rather, in order to effectuate defendant's suggested intent, it would require some action on the part of plaintiff with respect to her remaining interest in the first floor and, as is the case with defendant's proposal for a tenancy in common, that is not contemplated by any language contained within the four corners of the document, nor indicated in any other proof. All told, defendant's suggestion that the references to the second floor were intentional is belied by the context of the agreement, and the record provides ample support for Supreme Court's determination that plaintiff clearly and convincingly established the need for reformation of the agreement (see Gunther v Vilceus, 142 AD3d 639, 641 [2d Dept 2016], lv denied 28 NY3d 910 [2016]; True v True, 63 AD3d at 1148; Vasilakos v Gouvis, 296 AD2d at 669; Matter of Rosenblum, 284 AD2d 820, 822 [3d Dept 2001], lv denied 97 NY2d 604 [2001]; see generally NCCMI, Inc. v Bersin Props., LLC, 226 AD3d 88, 96 [1st Dept 2024]).[FN3]
We further agree with Supreme Court's determination denying defendant's cross-motion for counsel fees. The settlement agreement contemplated an award of counsel fees to a non-defaulting party in connection with an enforcement action for a breach or default by the other party; however, in declining to award either party any fees, Supreme Court determined that, although plaintiff was in default of the agreement, defendant was also in breach based upon his conduct with respect to the collection of rents from the first-floor tenant in the Watervliet property. Based upon that determination, Supreme Court did not abuse its discretion by declining to award defendant counsel fees (see generally Momberger v Momberger, 103 AD3d 971, 972 [3d Dept 2013]; Parnes v Parnes, 41 AD3d 934, 937 [3d Dept 2007]; compare Kirk v Kirk, 207 AD3d 708, 713 [2d Dept 2022]; Matter of Neuhauser v Eisenberger, 77 AD3d 951, 952 [2d Dept 2010]).
Pritzker, J.P., Fisher[*5], Powers and Mackey, JJ., concur.
ORDERED that the order is affirmed, with costs.

Footnotes

Footnote 1: Because this settlement was incorporated but not merged into a final judgment, the general rule requires that reformation be sought by "plenary action[,] providing a context in which to develop a record adequate to evaluate [the parties'] claims" (Caldwell v Caldwell, 209 AD2d 1022, 1022 [4th Dept 1994] [internal quotation marks and citation omitted]). However, "this Court has held that a court's alteration of a stipulation absent a plenary action is not fatal" (MacDonald v Guttman, 72 AD3d 1452, 1455 [3d Dept 2010]; see Banker v Banker, 56 AD3d 1105, 1107 n 2 [3d Dept 2008]; Brender v Brender, 199 AD2d 665, 666 n 2 [3d Dept 1993]). Under the circumstances before us, we do not believe dismissal is warranted (see CPLR 2001).

Footnote 2: Prior to entering the settlement agreement, plaintiff submitted a "case summary" to Supreme Court, which copied defendant, advising that she had proposed settling the matter by keeping either the Watervliet property in its entirety or one of the other four parcels, while relinquishing her rights to the remaining three parcels.

Footnote 3: Although there is no indication that the parties requested a hearing, and they make no contention that one is necessary on appeal, it is the preferred course when credibility issues might come into play (see generally Montero v Montero, 85 AD3d 986, 987 [2d Dept 2011], lv dismissed 18 NY3d 878 [2012]; Brender v Brender, 199 AD2d at 666; Lambert v Lambert, 142 AD2d 557, 557 [2d Dept 1988]). Nevertheless, we find that the failure to hold one does not alter the result here, as the circumstances of this case permitted Supreme Court to resolve the reformation issue on the papers and there is no indication that it relied on any evidence dehors the record. To that, we find that the intent of the parties may be clearly gleaned from the four corners of the document as well as the documentary proof contained in the record (see Marcella v Glowacki, 233 AD3d 1137, 1142 [3d Dept 2024]; Asset Mgt. & Capital Co., Inc. v Nugent, 85 AD3d 947, 948 [2d Dept 2011]; cf. Stache Invs. Corp. v Ciolek, 174 AD3d 1393, 1394-1395 [4th Dept 2019]; compare Walker v Walker, 67 AD3d 1373, 1374 [4th Dept 2009]; Caldwell v Caldwell, 209 AD2d at 1022; Lambert v Lambert, 142 AD2d at 557).