S.S. v R.S. (2025 NY Slip Op 50316(U))

[*1]

S.S. v R.S.

2025 NY Slip Op 50316(U)

Decided on March 10, 2025

Supreme Court, Westchester County

Hyer, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on March 10, 2025
Supreme Court, Westchester County

S.S., Plaintiff,

against
R.S., Defendant.

Index No. XXXXX

Plaintiff - Shari R. Gordon, Esq., Law Office of Shari R. Gordon, 40 Triangle Center, Yorktown Heights, New York 10598 
Defendant - Pro Se 
Attorney for the Child - Kathleen M. Hannon, Esq., 6 Standish Drive, Scarsdale, New York 10583 

James L. Hyer, J.

Relevant Factual and Procedural History
On June 6, 2022, this matrimonial action was commenced by Plaintiff, with the assistance of counsel, with the filing of a Summons and Complaint (NYSCEF Doc. # 1) (hereinafter collectively "Complaint), which sought the dissolution of the parties' marriage pursuant to New York State Domestic Relations Law (hereinafter "DRL") § 170(7) based upon the alleged irretrievable breakdown of the parties' relationship. The Complaint asserted that the parties had been married in the country of India in 2002 and that there were two issue of the marriage, being: (1) E.R. (D.O.B.: XX/XX/2003); and (2) S.R. (D.O.B.: X/XX/2010) (hereinafter collectively "Children").
On June 15, 2022, with the assistance of counsel, Defendant filed an Answer (NYSCEF Doc. No. 4).
On August 2, 2022, all parties and counsel appeared at a Preliminary Conference, during which the parties stipulated to grounds for dissolution of their marriage being DRL § 170(7), as noted in the Preliminary Conference Stipulation and Order (NYSCEF Doc. No. 23).
On September 20, 2022, an Order Appointing Privately Paid Attorney for the Children (NYSCEF Doc. No. 33) was entered appointing as attorney for the Children Kathleen M. Hannon, Esq. (hereinafter "Attorney For The Children").
On March 10, 2023, a Parenting Agreement was so ordered (NYSCEF Doc. No. 109) (hereinafter "Parenting Agreement"), setting forth a complete resolution of all custody and access issues pertaining to the Children.
On March 14, 2023, a Court Notice was issued advising that this action had been reassigned to the undersigned (NYSCEF Doc. No. 110).
On May 12, 2023, both parties appeared with counsel and engaged in a settlement conference after which a resolution of all remaining issues arising out of the requested dissolution of the parties' marriage was reached and the terms were placed on the record after which the parties were subject to an allocution (hereinafter "Stipulation of Settlement"). This resolution was memorialized in a so ordered Court Transcript (NYSCEF Doc. No. 150) (hereinafter "5/12/2023 Transcript") including the following:
"This is the second settlement conference that the Court has had with the parties and their respective attorneys. The result of which was a very significant period of time where the attorneys have met with me to discuss the terms that they've discussed with their clients to memorialize them in writing, so that they could be read onto the record today. Although I don't often do this, the attorneys have asked me to read the terms onto the record with the understanding that Defendant's counsel will place the child support agreement on the record, followed by Plaintiff's counsel who will place the college expenses that have been agreed to on the record. Okay. So the attorneys, thank you very much. I'm going to ask after I complete every provision for your confirmation that, that is your agreement that you've agreed upon between each other and with your respective clients. And to the clients, I'm going to ask that you listen very carefully because after I'm done reading the terms onto the record along with the attorneys, I'm going to swear you both in to confirm that you've listened to the entire agreement, you understood what was stated on the record and that you're agreeing to be bound by those terms."[FN1]
Addressing the distribution of a Vanguard Brokerage Account ending in "XXXX", the Stipulation of Settlement provides:
"THE COURT: . . . The parties represent to each other that the following bank accounts exist, which are to be distributed in the following manner:
* * *
THE COURT: Three: Vanguard Brokerage account held jointly by the parties, with an account number ending in XXXX with a value of $764,923.15, which the parties shall divide equally with each receiving 50 percent subject to any credit set forth in this agreement. Plaintiff's counsel, is that acceptable?
MS. GORDON: Yes, Your Honor.
THE COURT: Defendant's counsel?
MS. MALIK: Yes, Your Honor."[FN2]
The Stipulation of Settlement specifically addressed the parties' agreement pertaining to a real property known as XXXX (hereinafter "Property #1"):
"THE COURT:...The parties represent to each other that there are four parcels of real property that the parties own, each of which are marital property, which will each be addressed in the following manner:
One, Property #1 which is a single family home, titled in the name of both parties as tenants by the entirety, encumbered by a mortgage with an approximate payoff amount of $21,000, with a fair market value agreed to be $600,000 with a net equity of $579,000. The parties agree that the husband will receive sole ownership, interest and title in this property with the wife receiving a credit in the amount of $289,000.00 The parties shall cooperate in the transfer of this property, including but not limited to completing all transfer documents for said property and the husband shall pay all transfer costs associated with said property. The husband shall provide payment of all current and future carrying costs for said property and shall hold harmless and indemnify the wife from same. Plaintiff's counsel, is that acceptable to you?
MS. GORDON: Yes, Your Honor.
THE COURT: Defendant's counsel?
MS. MALIK: Yes, Your Honor."[FN3]
The Stipulation of Settlement specifically addressed the parties' agreement pertaining to a real property known as XXXX (hereinafter "Property #2"):
"THE COURT: Number two: Property #2, which is a single family townhouse titled in the name of the wife, encumbered by a mortgage of $227,914.29, with an agreed upon fair market value of $394,000.00, with a net equity of $166,085.71. The parties agree that the wife will receive sole ownership, interest and title in this property, with the husband receiving a credit in the amount of $83,043.85. The parties shall cooperate in the transfer of this property, including but not limited to completing all transfer documents for said property and the wife shall pay all transfer costs associated with said transfer. The wife shall provide payment of all current and future carrying costs for said property and shall hold harmless and indemnify the husband from same. Plaintiff's counsel, is that acceptable?
MS. GORDON: Yes, Your Honor.
THE COURT: Defendant's counsel?
MS. MALIK: Yes, Your Honor."[FN4]
The parties further set forth their resolution pertaining to two real properties located in the country of India (hereinafter collectively "India Properties"):
"The parties agree that there are two parcels of property located in the country of India, which the parties agree are marital, regardless of the manner in which they are both held in title. One parcel is a duplex located in XXXX and the other parcel which is vacant land located at XXXX, the fair market values which are not available at this time. And both parties represent to each other that they are unaware of any mortgages, equity lines of credit or other encumbrances against either parcel of real property. The parties agree that by May 31st 2023 the parties will agree upon a real estate broker to determine the fair market value of each parcel and to provide the parties with valuation reports. The Realtor will also list the properties for that fair market value and the parties will agree that a real estate attorney will assist with any real estate transfers of each parcel. The parties agree that by June 30th 2023 both parcels shall be listed for sale utilizing the India equivalent of the Multiple Listing Service. And both parties shall cooperate with the marketing of said properties including but not limited to completion of all listing agreements, permitting, signage on said parcels, permitting lock-boxes on said parcels and keeping both properties in broom-cleaned condition. The parties shall fully cooperate in the transfer of said properties, including but not limited to completing all transfer documents and appearing at any closings. The parties agree to accept any offers for purchase within 5 percent of the list price and agree to any downward modification of the list price as recommended by the listing broker. The parties agree that the gross proceeds of the sale of the parcels shall be distributed in the following manner and order of preference: One: Mortgage and equity line of credit payoff. Two: Title fees. Three: Transfer taxes. Four: Real estate broker commissions. Five: Real estate attorney's fees. Six: Any and all other further and customary closing costs. Seven: The remainder of the net proceeds shall be split equally amongst the parties. The parties agree to pay equally any and all current and future carrying costs for both parcels up until the date of closing of each. Counsel for the Plaintiff, is that acceptable?
MS. GORDON: Yes, Judge. And I would just like to correct the record that it's XXXX.

 THE COURT: Thank you for that clarification. Defendant's counsel?
MS. MALIK: Yes, Your Honor.
THE COURT: Thank you."[FN5]
On August 23, 2023, the parties entered into a Property Transfer Agreement (hereinafter "Property Transfer Agreement") (NYSCEF Doc. No. 180), wherein the parties modified the terms of the Stipulation of Settlement pertaining to the India Properties wherein Plaintiff agrees to transfer her interest in these properties to Defendant for agreed upon consideration:
"WHEREAS, the Husband and Wife are currently in the process of obtaining a divorce pursuant to applicable laws in the State of New York;
WHEREAS, as part of the divorce settlement, the Wife wishes to transfer her fifty percent (50%) interest in certain properties located in India: a duplex located in XXXX, [*2]and vacant land located at XXXX (the "Properties") to the Husband and the Husband agrees to accept the Wife's fifty percent (50%) interest in the Properties;
NOW, THEREFORE, in consideration of the mutual promises and covenants contained herein, the Husband and Wife agree as follows:
1. Property Transfer:
a. The Wife hereby agrees to transfer her fifty percent (50%) interest in the Properties to the Husband. The Husband shall become the sole owner of the Properties upon completion of the transfer.
b. The parties shall take the following steps to effectuate this transfer:
* * *
d. Both Parties acknowledge and agree that they are not familiar with all the rules and requirements under Indian Government rules and regulations.
e. They both agree to cooperate with any steps unknown to them except that the Husband will not agree to go to India for same.
* * *
g. The Wife shall complete the steps i-viii required of her, as detailed above, on or before September 22nd, 2023, the date in which Judge James L. Hyer directed all divorce documents be submitted by.
h. Once the transfer is complete, the Husband shall reimburse all legal expenses for the transfer to the Wife along with the payment of the 50% as detailed herein
* * *
3. Submission of Divorce Documents:
* * *
d. In the event, for whatever reason, the gift transfer contemplated herein cannot be done, the parties will agree to sell the properties at a mutually agreed upon time."
On October 24, 2023, a Judgment of Divorce (NYSCEF Doc. No. 188) (hereinafter "Judgment of Divorce") was entered dissolving the parties' marriage pursuant to DRL § 170(7) and incorporating by reference but not merging, the Parenting Agreement, Stipulation of Settlement and Property Transfer Agreement. On that day, a Notice of Entry of the Judgment of Divorce with proof of service were filed (NYSCEF Doc. Nos. 190 and 191).
On June 14, 2024, with the assistance of counsel, Defendant filed a Notice of Motion (hereinafter "Motion Sequence No. 5") (NYSCEF Doc. Nos. 235-252), seeking the following relief: (1) Modifying the Judgment of Divorce dated October 19, 2023 (the "Judgment of Divorce") for an adjustment of credits, directing Plaintiff to return approximately 824 of Defendant's premarital shares in VTSAX erroneously transferred to Plaintiff; (2) Directing Plaintiff to remit $9,793.11 representing Plaintiff's 50% share of the unpaid property taxes; (3) Sanctioning Plaintiff for submitting illegitimate and fraudulent documents in connection to the transfer of India Properties, demanding that Defendant sign said documents, and essentially urging Defendant partake and be a party to fraud, and awarding Defendant reasonable attorneys' fees and costs in defending against the same; (4) Re-appointing Kathleen Hannon, Esq. as the Attorney for the Child, or, if she is unavailable, another Attorney for the Children, to address violations of the Parenting Agreement So-Ordered on March 10, 2023 (the "Parenting Agreement"); and (5) For such other and further relief as this Court deems just and proper.
In support of Motion Sequence No. 5 Defendant filed an Affidavit (NYSCEF Doc. No. [*3]237) (hereinafter "Defendant's Affidavit"). Defendant asserted that the VTSAX shares are pre-marital property of Defendant requiring the award of the requested credit. Defendant asserted, "My attorney provided a trail of these shares from January 2022 through October 2023 to Plaintiff's counsel in an attempt to resolve the matter outside Court," and continued, "However, our request was ignored."[FN6]
Defendant then argued that, "The 824 VTSAX shares were erroneously transferred to Plaintiff as part of the distribution of our joint Vanguard Brokerage Account ending in XXXX."[FN7]

With respect to his request for a property tax credit, Defendant claimed that he is entitled to a credit arising from the alleged difference in his payment of property taxes versus such payments made by Plaintiff for the Property#1 and Property #2. Defendant argues, "This sum was inadvertently not calculated when all the adjustments were included in the Judgment of Divorce and I am seeking that this be corrected."[FN8]

Defendant then claimed that he is entitled to the relief sought pertaining to the India Properties as Plaintiff has engaged in improper conduct with respect to property transfer documents related to these properties. In support of his position, Defendant attached as an exhibit to his application an unsworn letter from Rabindra K. Nanda (NYSCEF Doc. No. 248) (hereinafter "Nanda Letter").[FN9]
Defendant then asserts that the re-appointment of the Attorney for the Children has been necessitated by alleged violations of the Parenting Agreement by Plaintiff.
On June 28, 2024, with the assistance of counsel, Plaintiff filed a Cross Motion (hereinafter "Motion Sequence No. 6") (NYSCEF Doc. Nos. 254-170), seeking the following relief: (1) Denying in its entirety the relief requested by the Defendant in the Defendant's Notice of Motion filed with the Court on June 14, 2024; (2) Awarding Plaintiff counsel fees in the amount of $10,000 and permission to request additional counsel fees with costs paid by the Defendant, and sanctioning the Defendant and his counsel for Defendant's baseless post judgment motion and frivolous applications contained therein; (3) Enforcing the Judgment of Divorce and directing Defendant to pay forthwith the Defendant's 50% share of summer camp for the parties' daughter S.R.; and (4) For such other and further relief as is just and proper including a psychological forensic examination of the Defendant.
Plaintiff opposed the application for both alleged credits. With respect to the India Properties, Plaintiff asserts that the gift deeds annexed to the cross motion (NYSCEF Doc. Nos. 261-262) are not fraudulent and directs the Court to an unsworn letter from Ashok Kumar [*4]Tripathy (NYSCEF Doc. No. 263) (hereinafter "Tripathy Letter").[FN10]
Finally, with respect to the request that the Attorney for the Children be reappointed, while Plaintiff adamantly denied violating the Parenting Agreement, she consented to the re-appointment.[FN11]

On August 7, 2024, submissions in opposition to Motion Sequence No. 6 were filed (NYSCEF Doc. Nos. 278-284).
On October 4, 2024, a Decision and Order for Motion Sequence No. 5 was entered (NYSCEF Doc. No. 286) and a separate Decision and Order for Motion Sequence No. 6 was entered (NYSCEF Doc. No. 287), which mirror each other (hereinafter collectively "Decision").
The Decision made determinations as to certain relief requested and as to the remaining relief sought, reserved decision until completion of a hearing as set forth below:
Motion Sequence No. 5:
(1) Request for entry of order modifying the Judgment of Divorce dated October 19, 2023 (the "Judgment of Divorce") for an adjustment of credits, directing Plaintiff, S. S. ("Plaintiff") to return approximately 824 of Defendant's premarital shares in VTSAX erroneously transferred to Plaintiff.
The Court determined that questions of fact exist as to this requested relief and referred the issue to a hearing.
(2) Request for entry of order directing Plaintiff to remit $9,793.11 representing Plaintiff's 50% share of the unpaid property taxes.
The Court determined that questions of fact exist as to this requested relief and referred the issue to a hearing.
(3) Request for the entry of order sanctioning Plaintiff for submitting illegitimate and fraudulent documents in connection to the transfer of India Properties, demanding that Defendant sign said documents, and essentially urging Defendant partake and be a party to fraud, and awarding Defendant reasonable attorneys' fees and costs in defending against the same.
The Court determined that questions of fact exist as to this requested relief and referred the issue to a hearing.
(4) Request for the entry of Order re-appointing Kathleen Hannon, Esq. as the Attorney for the Child, or, if she is unavailable, another Attorney for the Children, to address violations of the Parenting Agreement So-Ordered on March 10, 2023 (the "Parenting Agreement").
The Court granted this relief on consent to be effectuated by an Order of Appointment as to the parties' youngest child.
(5) Request for the entry of Order granting such other and further relief as this Court deems just and proper.
The Court denied this requested relief.
Motion Sequence No. 6:
(1) Denying in its entirety the relief requested by the Defendant, R. S., in the Defendant's Notice of Motion filed with the Court on June 14, 2024.
As noted above, certain relief was granted on consent, certain relief was denied, while other requested relief was referred to a hearing.
(2) Awarding Plaintiff counsel fees in the amount of $10,000 and permission to request additional counsel fees with costs paid by the Defendant, and sanctioning the Defendant and his counsel for Defendant's baseless Post Judgment motion and frivolous applications contained therein.
The Court denied this requested relief.
(3) Enforcing the Judgment of Divorce and directing Defendant to pay forthwith the Defendant's 50% share of Summer Camp for the parties' daughter S. R.
The Court determined that questions of fact exist as to this requested relief and referred the issue to a hearing.
(4) For such other and further relief as is just and proper including a psychological forensic examination of the Defendant.
The Court denied this requested relief.
The Decision then provided clear directives regarding the scheduling of a hearing to be held to address the relief requested and referred to hearing, along with pre-hearing disclosure to be filed with the Court and served upon opposing parties:
"Accordingly, it is hereby
ORDERED that Defendant's motion (Motion Sequence No. 5) and Plaintiff's motion (Motion Sequence No. 6) are denied in part and granted in part to the extent that the requested relief shall be addressed at a hearing, as set forth herein; and it is further
ORDERED that a Status Conference shall be held on October 10, 2024, at 9:00 a.m., wherein all parties and counsel must be present in person; and it is further
ORDERED that all parties and counsel shall appear for an in person hearing before this Court, which shall commence on March 6, 2025, at 9:00 a.m., and continue day-to-day until completion; and it is further
ORDERED that Kathleen Hannon, Esq. shall be reappointed as the Attorney for the Children and the Court shall issue an Order of Reappointment forthwith; and it is further
ORDERED that by February 6, 2025, both parties shall file with the Court (with proof of service) and serve upon each other via overnight delivery the following pre-hearing disclosure: (1) List of Witnesses to be called to testify at the hearing with the understanding that if a witness is not listed they may be precluded from providing testimony at the hearing; (2) List of Exhibits enumerating each exhibit to be utilized at the hearing with the understanding that if an exhibit is not listed it may be precluded from use at the hearing; and (3) Copies of Exhibits listed in the List of Exhibits with the understanding that if an exhibit is not filed and/or disclosed between the parties it may be precluded from use at the hearing; and it is further
ORDERED that Defendant shall serve this Decision and Order with Notice of Entry on [*5]Plaintiff and Plaintiff's counsel by October 8, 2024, and shall file an Affidavit of Service by October 8, 2024; and it is further
ORDERED that any relief requested not expressly granted herein is denied.
The foregoing constitutes the Decision and Order of this Court."
On October 4, 2024, an Order Appointing Attorney for the Child (NYSCEF Doc. No. 288) was entered re-appointing Kathleen M. Hannon, Esq., as the attorney for the parties' child S.R. The Order was amended to reflect the appointment as an exception to Rule 36.2(d)(4) (NYSCEF Doc. No. 295).
On October 10, 2024, all parties and counsel appeared for a Conference after which an Order (NYSCEF Doc. No. 294) was entered scheduling a Settlement Conference to be held on December 2, 2024, at 3:00 p.m.
On November 26, 2024, Defendant's then counsel filed a letter (NYSCEF Doc. No. 297) annexing a letter of termination from Defendant and requesting if counsel's appearances was required at the scheduled conference in light of the termination and the Court entered an Order (NYSCEF Doc. No. 298) confirming that appearance of counsel and parties were required.
On December 2, 2024, a Settlement Conference was held wherein all parties and counsel appeared for which a so ordered Court Transcript was filed (NYSCEF Doc. No. 301) (hereinafter "12/2/2024 Transcript"). During the Conference Plaintiff's counsel requested clarification as to if Defendant's counsel represented Defendant in this post-judgment litigation.[FN12]
Defendant's counsel responded that she would represent Defendant during the Conference and thereafter, if Defendant sought her continued representation, she would file an engagement agreement with a notice of appearance.[FN13]

In an unmistakable acknowledgement of the parties of the conflicting information set forth in the Nanda Letter and Tripathy Letter, the parties entered into an agreement to jointly retain an agreed-upon attorney, admitted in the State of New York and country of India, to provide guidance to the parties as to the correct manner as contemplated in the Property Transfer Agreement to transfer the India Properties, (hereinafter "Third Property Agreement") the terms of which were read upon the record [FN14]
:
"THE COURT: Good. Good. So I want to make sure it's clear for the record; that the parties are agreeing that by, we'll say January 5th, 2025, to retain, jointly, an attorney admitted in the State of New York, as well as the Country of India. And his or her scope of responsibilities will be to review the land transfer documents that were prepared and signed by the plaintiff.
MS. GORDON: No, Judge. It's NYSCEF 299.
S. S.: Yeah. As to the previous ones. Yes.
MS. GORDON: Well 
THE COURT: In order to confirm that those documents were sufficient in order to [*6]effectuate the real estate transfers that the parties had agreed to in their stipulation of settlement, or, if they are not sufficient, to set forth the steps and the documents needed to effectuate those transfers, according to the laws of the Country of India. Plaintiff's counsel; is that your understanding?
MS. GORDON: Yes, Judge.
THE COURT: Defendant's counsel; is that your understanding?
MS. MALIK: Yes. However, my client would also like to submit the other documents that he has from India government like, they submit the land documents, so that the attorney can review everything.
THE COURT: That's perfectly fine. Plaintiff's counsel; do you have any objection to that?
MS. GORDON: No, Judge. I don't.
THE COURT: Very good. Now, I'd like you folks to please submit a letter by that January the 5th date to confirm that you've retained counsel and that you've provided counsel with all the information.
MS. GORDON: 25th?
THE COURT: January the 5th, 2025, and perhaps what you do is you file a copy of the letter annexing all of these supporting documents. And my suggestion would be that you ask the lawyer within 30 days to provide you with a written report in the form of an affirmation. Ms. Gordon, is that acceptable?
MS. GORDON: Yes, your Honor. I appreciate it.
THE COURT: Defendant's counsel?
MS. MALIK: Yes, your Honor."
No resolutions were reached regarding the remaining issues referred to hearing pursuant to the Decision. Notably, Defendant's Counsel confirmed that Defendant's relief requested pertaining to the real property taxes was not addressed directly in the parties' Stipulation of Settlement and that Defendant did not have a basis in law for that request.[FN15]
Thereafter, Defendant's counsel did not file any engagement agreement or Notice of Appearance indicating that she was engaged by Defendant to represent Defendant in this post-judgment litigation following the Settlement Conference. Nonetheless, on February 27, 2025, Defendant's Counsel filed a letter confirming that her office had not been retained to represent Defendant in further post-judgment representation and that Defendant would be proceeding as a self-represented litigant (NYSCEF Doc. No. 302).
On March 4, 2025, Defendant filed a letter requesting an adjournment of the scheduled hearing, proposing August 7, 2025, as the earliest possible date ("NYSCEF Doc. No. 310). If granted, this adjournment would have delayed the hearing for at least another five months, being at least ten months following the date of entry of the Decision. In response, Plaintiff's counsel filed a letter to the Court wherein she advised that her client did not consent to any adjournment of this case. (NYSCEF Doc. No. 311). Finding such a delay of nearly one year unacceptable in the event the adjournment request was granted, the Court denied this request by Order (NYSCEF Doc. No. 312) directing:
"1. The request for an adjournment is denied and all parties and counsel are directed to appear in person on March 6, 2025, at 9:00 a.m. for the scheduled hearing.
2. Unless modified herein, all prior orders, decisions and judgments entered in this matter remain in effect.
3. Plaintiff's counsel is ordered to serve a copy of this so ordered letter on Defendant by March 4, 2025, via e-mail and on counsel via NYSCEF with proof of service by March 4, 2025."
On March 4, 2025, Plaintiff's Counsel filed a second letter wherein she asserts, "S. S. requests that this entire post judgment matter be dismissed in the interests of justice" (NYSCEF Doc. No. 315).
Despite the Decision directing that all pre-hearing disclosure be filed with the Court and served upon opposing parties by February 6, 2025, by that date neither party had filed such disclosure with the Court, nor filed proof of service of such disclosure on the opposing party, nor did the Court grant any adjournment of this deadline.

Hearing
Appearances:
At the hearing, appearances were made by Plaintiff, Plaintiff's Counsel, Defendant as a self-represented litigant, and the Attorney for the Children.
As no pending requests for relief pertaining to the Children were before the Court, the Attorney for the Children was relieved and excused. 
Defendant's Capacity:
Motion Sequence No. 6 sought the entry of an order directing a psychological forensic examination of Defendant and while this application was denied, at hearing additional statements were made regarding Defendant's mental health. The Court then inquired of Plaintiff's counsel as to any position taken regarding the possible impairment or incapacity of Defendant, and no position was taken. The Court then engaged in an inquiry of Defendant to determine if any action was needed, such as the appointment of a guardian ad litem for Defendant, (Inwood Tower, Inc. v V.F., 75 Misc 3d 1211(A) (NY Sup. Ct. 2022) ("The court has an obligation to evaluate a party's need for a guardian ad litem even when the party is represented by counsel and the court may appoint a guardian ad litem at any stage in the proceeding"). Defendant's responses to the Court's inquiry were clear and responsive to the questions presented, and the Court determined that no further action was required of the Court. (Vinkur v. Balzaretti, 62 AD2d 990 [2d Dept. 1978]) (recognizing the public policy which requires rigorous protection for the rights of those who suffer from incapacity or impairment).
Applications:
1. Plaintiff's Application To Dismiss
With respect to the application to dismiss Motion Sequence No. 5 set forth in NYSCEF Doc. No. 315, Plaintiff's counsel again made this application at hearing asserting that granting such relief would be in the interests of justice, which was denied to permit the hearing to proceed recognizing the strong public policy in favor of resolving cases on the merits (Hyde Park Motor Co., Inc. v. Sucato, 24 AD3d 724 [2d Dept 2005]).
2. Plaintiff's Application to Withdraw Motion Sequence No. 6
At hearing, Plaintiff's counsel made an application to withdraw the cross motion filed by Plaintiff being Motion Sequence No. 6 which was granted. Therefore, none of the affirmative [*7]relief sought in that motion remains before this Court for determination (Stoute v City of New York, 91 AD2d 1043, 1044 [2d Dept 1983]).
3. Defendant's Application to Adjourn Hearing
At hearing, Defendant made an application to adjourn the hearing, which was denied, as this application had been denied. The Court made this determination as the hearing had been scheduled five months earlier affording both parties ample opportunity to prepare and Defendant's prior application for adjournment had been denied (Spodek v. Lasser Stables, 89 AD2d 892 [2d Dept 1982] ("We affirm. In so doing, we note that the conduct of a trial, including the question of adjournments, is within the sound discretion of the trial court.").
Hearing Witnesses & Exhibits:
Prior to the hearing proceeding, the Court inquired as to the lack of pre-hearing disclosure and the respective positions of the parties as to if the Court should preclude testimony of witnesses not disclosed and the use of proposed exhibits not disclosed pursuant to the Court's directives.
Both Plaintiff's counsel and Defendant acknowledged that they failed to comply with the pre-hearing witness and exhibit disclosure requirements set forth in the Decision, and failed to request adjournments of this Court imposed deadline to do so approximately one month prior to the commencement of the hearing. Despite the Court not having been presented with any reasonable justification for this departure from the Court's directives, as both parties engaged in the same lack of pre-hearing disclosure, the Court determined that the most equitable manner to proceed was to afford both parties the opportunity to identify on the record any witnesses they wished to present testimony at the hearing and to mark for identification any exhibits they sought to utilize at the hearing.
Plaintiff's counsel advised that Plaintiff would be calling two witnesses being: (1) Plaintiff; and (2) Ashok Kumar Tripathy. Plaintiff's counsel then advised the Court that Plaintiff would ask that one exhibit be marked for identification being: (1) Ashok Kumar Tripathy Documents,[FN16]
(hereinafter "Tripathy Documents"), which was marked for identification only as Plaintiff's Exhibit 1.
Defendant advised that he would be calling two witnesses being: (1) Defendant; and (2) Sasmita Pradhan. Defendant then advised the Court that Defendant would ask that one exhibit be marked for identification being: (1) India Litigation Documents,[FN17]
which was marked for identification only as Defendant's Exhibit A.
To permit the non-party witnesses to testify virtually, the Court obtained from Plaintiff's counsel and Defendant the e-mail addresses for both non-party witnesses, and the Court circulated a Microsoft Teams Link to the parties, counsel, and non-party witnesses.
During the hearing, the parties were the only witnesses to testify and Plaintiff's Exhibit 1 was the only exhibit admitted into evidence which was done on consent of Defendant.

 Legal Analysis
 [*8]A. 
Plaintiff's Exhibit 1 — Tripathy Documents
As noted above, Plaintiff's Exhibit 1 was admitted into evidence on consent and includes two separate documents, the first being a two-page document entitled "Affidavit" dated March 3, 2025 (hereinafter "Tripathy Affidavit"); and the second being a fourteen-page unsworn letter dated June 18, 2024 (hereinafter "Tripathy Letter").
Turning first to the Tripathy Affidavit, the substantive portion includes the following:

 "I, A.K. Tripathy, as an Indian Advocate, India do hereby most solemnly affirm and state on oath as follows:-
1. That, S. S. is my client and as per her requirement she requested to present a Legal opinion regarding Gift Deeds dated 09th August 2023. Accordingly, I provided my legal opinion on 18th June 2024.
2. That, in India for legal opinion oath is not required to support the same. Howbeit, as per request of my client, I submit this oath by virtue of affidavit.
3. That, I have prepared the Legal Opinion based on statutory provisions of different acts and rules of Odisha, India with reference to verdicts of Supreme Court of India which have been cited in the said Legal Opinion.
4. That, I swear this affidavit on oath that those I have narrated in the said legal opinion all are within the prevue of Indian Law and based with the statutory provision of the law as well as required verdict of the Supreme Court of India as such the said legal opinion may be considered.
5. That, I executed this affidavit to fulfil the legal requirement of my client.
That, the facts of the above affidavit are all true and correct to the best of my information and belief."
While the Tripathy Affidavit was admitted into evidence on consent, the Court must determine what, if any, evidentiary value it has. Initially, a review of the two-page document reflects that it fails to comply with New York State Civil Practice Law and Rules (hereinafter "CPLR") § 2309(c) which requires an affidavit notarized outside the State of New York to be accompanied by a certificate of conformity. However, as the lack of a certificate of conformity has been determined not to be fatally defective, the Court will not disregard the two-page document on that basis (Willingham v. LeJarde, 218 AD3d 518 [2d Dept 2023]).
The Court must then consider if the Tripathy Affidavit may be accepted as testimony of Ashok Kumar Tripathy. While the right to cross-examination is fundamental, affidavits should not be utilized from witnesses who are not made available in court unless the right to cross-examination has been waived by the other parties (J.L. v. A.D.L.-S, 82 Misc 3d 1223(A) (Westchester Sup. Ct. 2024]). By Defendant's consent that Plaintiff's Exhibit 1 be moved into evidence, he waived his right to cross-examine Ashok Kumar Tripathy, and the Court will accept the Tripathy Affidavit as direct testimony of Ashok Kumar Tripathy.
However, the Court will provide such testimony contained in the Tripathy Affidavit the appropriate weight as this Court was unable to determine the credibility of the witness, who did not appear before the Court preventing the Court to make a credibility assessment through the personal observation of the Court of the witness testimony (Lineschmidt v. Lineschmidt, 163 AD3d 949 [2d Dept 2018] [trial court's assessment of credibility of witnesses is afforded great weight on appeal]). The Court will further note that upon review of the Tripathy Affidavit, no [*9]clear legal opinion is provided pertaining to the India Properties or any of the documents that the parties assert they prepared to effectuate the transfer of these properties. Instead, the Tripathy Affidavit merely references a legal opinion prepared on June 18, 2024, but does not recite the contents of the opinion within the affidavit, nor does it indicate that the opinion is attached as an exhibit to the affidavit with the contents thereof being incorporated by reference into the affidavit. Similarly, while the Tripathy Affidavit references gift deeds dated August 9, 2023, these documents were not attached as an exhibit or otherwise admitted into evidence at the hearing.[FN18]
Accordingly, while the Tripathy Affidavit was admitted into evidence and accepted as direct testimony of Ashok Kumar Tripathy, it offers little assistance, if any, to the Court in making a determination as to the issues to be addressed.
Turning next to the Tripathy Letter, this is an unsworn document and as such does not constitute evidentiary proof in admissible form (Thomas v. Woodmere Health Care Center, Inc., 258 AD2d 516 [2d dept. 1999]) ("The unsworn statements submitted by the plaintiff do not constitute evidentiary proof in admissible form sufficient to defeat the motion"). Further and similar to the Tripathy Affidavit, the Tripathy Letter references gift deeds, foreign statutes and foreign cases without annexing them as exhibits or incorporating them by reference into the letter. Accordingly, the Tripathy Letter offers little assistance, if any, to the Court in making a determination as to the issues to be addressed.
B. Request for entry of order modifying the Judgment of Divorce dated October 19, 2023 (the "Judgment of Divorce") for an adjustment of credits, directing Plaintiff, S.S. ("Plaintiff") to return approximately 824 of Defendant's premarital shares in VTSAX erroneously transferred to Plaintiff.
The Appellate Division Second Department has noted the manner within which a trial Court is to interpret a stipulation of settlement incorporated but not merged into a judgment of divorce:
"A stipulation of settlement that is incorporated but not merged into a judgment of divorce is a contract subject to principles of contract construction and interpretation" (Gluck v. Gluck, 205 AD3d 1006, 1007, 166 N.Y.S.3d 876 [internal quotation marks omitted]; see Kirk v. Kirk, 207 AD3d 708, 711, 174 N.Y.S.3d 381; Levi—Marchessault v. Marchessault, 162 AD3d 650, 651, 78 N.Y.S.3d 395). In interpreting a stipulation of settlement, "the court should arrive at a construction that will give fair meaning to all of the language employed by the parties to reach a practical interpretation of the expressions of the parties so that their reasonable expectations will be realized" (Matter of Schiano v. Hirsch, 22 AD3d 502, 503, 803 N.Y.S.2d 643 [2005]; see Kirk v. Kirk, 207 AD3d at 711, 174 N.Y.S.3d 381; Shkreli v. Shkreli, 186 AD3d 638, 639, 129 N.Y.S.3d 177 [2020]). A court may not rewrite an agreement "by adding or excising terms under the guise of construction, and it may not construe the language in such a way as would distort the contract's apparent meaning" (Kirk v. Kirk, 207 AD3d at 711, 174 N.Y.S.3d 381 [internal quotation marks omitted]; see Vermont Teddy Bear Co. v. 538 Madison Realty Co., 1 [*10]NY3d 470, 475, 775 N.Y.S.2d 765, 807 N.E.2d 876; McPhillips v. McPhillips, 165 AD3d 917, 919, 85 N.Y.S.3d 541). " 'Moreover, a court cannot reform an agreement to conform to *943 what it thinks is proper, if the parties have not assented to such a reformation' " (Tamburello v. Tamburello, 113 AD3d 752, 753, 978 N.Y.S.2d 864, quoting Cohen—Davidson v. Davidson, 291 AD2d 474, 475, 740 N.Y.S.2d 68; see Cappello v. Cappello, 286 AD2d 360, 361, 729 N.Y.S.2d 175).
* * *
Further, to the extent that the Supreme Court determined that the stipulation **450 of settlement was affected by a mutual mistake, reformation was not appropriate. A motion is not the proper vehicle for challenging a separation agreement incorporated but not merged into a judgment of divorce. Rather, the plaintiff was required to commence a plenary action to reform the stipulation (see Spataro v. Spataro, 268 AD2d 467, 468, 702 N.Y.S.2d 342; Matter of Scalabrini v. Scalabrini, 242 AD2d 725, 726, 662 N.Y.S.2d 581; Lambert v. Lambert, 142 AD2d 557, 558, 530 N.Y.S.2d 223). In any event, reformation of the stipulation was unwarranted, as the parties' mistake regarding the category of benefits the defendant would receive did not "involve a fundamental assumption of the contract" (Perretta v. Perretta, 187 AD3d 1076, 1077, 130 N.Y.S.3d 727 [internal quotation marks omitted]; see Simkin v. Blank, 19 NY3d 46, 53, 945 N.Y.S.2d 222, 968 N.E.2d 459; Hackett v. Hackett, 115 AD3d 800, 803, 982 N.Y.S.2d 167)."
(Anderson v. Anderson, 221 AD3d 941 [2d Dept 2023]).
Here, the parties entered into the Stipulation of Settlement, the terms of which were incorporated by reference but not merged into the Judgment of Divorce. The terms of the Stipulation of Settlement were clear and unambiguous, including those pertaining to the equitable distribution of the parties' assets including the parties' joint Vanguard Brokerage Account ending in XXXX. The Court finds the argument of Defendant that, "The 824 VTSAX shares were erroneously transferred to Plaintiff as part of the distribution of our joint Vanguard Brokerage Account ending in XXXX," to be without merit as his own affidavit submitted in support of his application, confirms that he and his then counsel were aware of Defendant's belief that he was entitled to this credit, communicated that belief to Plaintiff's counsel who rejected the request and nonetheless proceeded to enter into the Stipulation of Settlement which did not contain such credit.
Moreover, beyond the Court's review of the terms of the Stipulation of Settlement, Defendant provided no evidence at the hearing pertaining to this request, provided no testimony to support this request and elicited no testimony from the cross-examination of Plaintiff to support this request.
Based upon the foregoing, as well as the submissions made to this Court, the relief requested by Defendant is hereby denied.
C. Request for entry of order directing Plaintiff to remit $9,793.11 representing Plaintiff's 50% share of the unpaid property taxes.
The Stipulation of Settlement set forth clear terms pertaining to the manner within which the parties would address the distribution of both the Property #1 and Property #2 with each receiving sole ownership of one parcel with the other receiving a cash credit. These provisions further required that for the property each would receive, that party would "provide payment of [*11]all current and future carrying costs for said property and shall hold harmless and indemnify" the other from same.
In addition to the parties having set forth a detailed resolution as to these two parcels, including the payment of current and future carrying costs, no mention was made as to any credits due either party pertaining to real estate taxes associated with the properties. Accordingly, the Court finds Defendant's argument with respect to the sought after credit that, "This sum was inadvertently not calculated when all the adjustments were included in the Judgment of Divorce and I am seeking that this be corrected," to be without merit.
Moreover, beyond the Court's review of the terms of the Stipulation of Settlement, Defendant provided no evidence at the hearing pertaining to this request, provided no testimony to support this request and elicited no testimony from the cross-examination of Plaintiff to support this request.
Based upon the foregoing, as well as the submissions made to this Court, the relief requested by Defendant is hereby denied.
D. Request for the entry of order sanctioning Plaintiff for submitting illegitimate and fraudulent documents in connection to the transfer of India Properties, demanding that Defendant sign said documents, and essentially urging Defendant partake and be a party to fraud, and awarding Defendant reasonable attorneys' fees and costs in defending against the same.
In this action, the parties entered into three separate agreements pertaining to the India Properties. First, the Stipulation of Settlement set forth clear and unambiguous terms as to the parties' agreement regarding the India Properties. These terms included the manner of valuation of the properties, how they would be marketed and transferred, and how the net proceeds would be distributed. If these terms had been complied with, the India Properties would have been valued in May of 2023 and listed for sale in June of 2023. 
Next, in August of 2023, the parties entered into the Property Transfer Agreement which modified the terms of the Stipulation of Settlement pertaining to the India Properties, in that Plaintiff agreed to transfer her interest in these parcels to Defendant in consideration for payment of a set amount. While the agreement included obligations of the parties pertaining to the contemplated transfers, notably it included the following statements, "Both Parties acknowledge and agree that they are not familiar with all the rules and requirements under Indian Government rules and regulations," and, "They both agree to cooperate with any steps unknown to them except that the Husband will not agree to go to India for same." The agreement further includes the following provision, "In the event, for whatever reason, the gift transfer contemplated herein cannot be done, the parties will agree to sell the properties at a mutually agreed upon time."
Finally, in December of 2024, after the filings of Motion Sequence Nos. 5 and 6, the parties entered into the Third Property Agreement in the form of a binding stipulation entered into in open court by counsel with the parties present (Cappello v. Cappello, 286 AD2d 360 [2d Dept 2001]). Faced with the parties having two diametrically opposed positions with respect to the lawful process to complete the contemplated transfers of the India Properties pursuant to the Property Transfer Agreement, the Third Property Agreement sought to remedy this issue. Specifically, the parties agreed to jointly retain an attorney admitted in both New York State and India to review the land transfer documents prepared by the parties pertaining to the India [*12]Properties to confirm that those documents were sufficient in order to effectuate the real estate transfers that the parties had agreed to in their Stipulation of Settlement, or, if they were not sufficient, to set forth the steps and the documents needed to effectuate those transfers. The attorney was to provide an opinion in the form of an affirmation within thirty days of being retained. This agreement also required the parties to jointly file confirmation that the attorney was retained by January 5, 2025, so that the Court could confirm that the process was underway, and would have afforded the parties an opinion letter by no later than February 5, 2025.
Despite the January 5, 2025, deadline for the parties to file proof of compliance with the Third Property Agreement, no such proof was filed with the Court. No mention of this was made through the entirety of the hearing leaving the Court to infer that neither party has taken any steps to effectuate the terms of the Third Property Agreement, including efforts to jointly retain an appropriate attorney to complete the transfers as the parties intended in the Property Transfer Agreement.
During the hearing this Court was presented with nothing to permit the Court to make a determination, as to if any, of the documents pertaining to the India Properties prepared by the parties are appropriate to effectuate the transfers or to the extent they are insufficient, if they are fraudulent in any way.
Based upon the foregoing, as well as the submissions made to this Court, the relief requested by Defendant is hereby denied.
By March 28, 2025, the parties are hereby directed to comply with the terms of the Third Property Agreement by filing proof of joint retention of an attorney to complete the scope of services set forth in the agreement.
E. Other relief.
To the extent any relief requested has not been granted or otherwise addressed herein, it is hereby denied.
Accordingly, it is hereby
ORDERED that Motion Sequence No. 6 is withdrawn; and it is further
ORDERED that at the relief sought in Motion Sequence No. 5 referred to hearing for determination is hereby denied; and it is further
ORDERED that by March 28, 2025, the parties are hereby directed to comply with the terms of the Third Property Agreement by filing proof of joint retention of an attorney to complete the scope of services set forth in the agreement; and it is further
ORDERED that on March 31, 2025, at 9:00 a.m., all parties and counsel shall appear in person for a Status Conference to confirm compliance with the provisions of the Third Property Agreement; and it is further
ORDERED that Plaintiff's Counsel shall serve via e-mail and NYSCEF filing this Decision and Order with Notice of Entry on Defendant and Defendant's Counsel by March 12, 2024, and by that date shall file an Affidavit of Service; and it is further
ORDERED that any relief requested not expressly granted herein is denied.
The foregoing constitutes the Decision and Order of this Court.
Dated: March 10, 2025
White Plains, New York
ENTER,
HON. JAMES L. HYER, J.S.C.

Footnotes

Footnote 1:5/12/2023 Transcript, Pg. 2:18-25, Pg 3:1-15.

Footnote 2:5/12/2023 Transcript, Pg. 9:16-18, Pg. 10:22-25, Pg. 11:1-5.

Footnote 3:5/12/2023 Transcript, Pg. 4:13-25, Pg. 5:1-12.

Footnote 4:5/12/2023 Transcript, Pg. 5:13-25, Pg. 6:1-7.

Footnote 5:5/12/2023 Transcript, Pg. 6:8-25; Pg. 7:1-25, Pg. 8:1-16.

Footnote 6:Defendant's Affidavit ¶ 11.

Footnote 7:Defendant's Affidavit ¶ 13.

Footnote 8:Defendant's Affidavit ¶ 16.

Footnote 9:This Court has not been presented with any testimony of Rabindra K. Nanda or evidence that this individual is a licensed attorney or equivalent thereto in the country of India or had any other professional credentials pertaining to real estate transfers in the country of India.

Footnote 10:This Court has not been presented with any testimony of Ashok Kumar Tripathy, other than in the form of a brief affidavit which will be referenced in this Decision below, or evidence that this individual is a licensed attorney or equivalent thereto in the country of India or had any other professional credentials pertaining to real estate transfers in the country of India.

Footnote 11:While Motion Sequence No. 6 sought affirmative relief, no discussion of these requests is noted in this Decision as initial determinations were made as to this relief by this Court with certain requests being referred to hearing after which Plaintiff withdrew her application as noted here.

Footnote 12:(12/2/2024 Transcript, Pg. 8:18-25; Pg. 9:1-7)

Footnote 13:(12/2/2024 Transcript, Pg. 12:12-25, Pg. 13:1-25; Pg. 14:1-2; Pg. 15:22-25; Pg. 16:1, 9-11)

Footnote 14:(12/2/2024 Transcript, Pg. 22:25; Pg. 23:1-25; Pg. 24:1-18)

Footnote 15:12/2/2024 Transcript, Pg. 34:23-25, Pg. 35:14-16.

Footnote 16:The title provided for this exhibit is only for identification purposes and in doing so the Court makes no legal determination as to this exhibit.

Footnote 17:The title provided for this exhibit is only for identification purposes and in doing so the Court makes no legal determination as to this exhibit.

Footnote 18:Plaintiff's counsel noted during the hearing that Plaintiff had "gift deeds" with her in the courtroom, but to the extent Plaintiff did have these documents they were neither marked for identification or admitted into evidence, despite both parties being provided the opportunity to utilize any exhibits at the hearing.